United Sponging Company, Respondent, *v.* The Preferred Accident Insurance Company of New York, Appellant.

(Supreme Court, Appellate Term, First Department, November, 1916.)

Insurance (burglary) — provisions of policy of — liability of company.
    A policy of burglary insurance which provides that except ·for loss by an " outside job " the company shall not be liable unless there are visible marks on the premises of the use of violence in making an entry or exit does not cover a burglary where the offenders after drugging the night watchman entered the premises through doors by means of keys taken from him and left by way of an elevator the door of which they opened in the usual manner by lifting the bar out of place and pulling the bolt down so as to release it from its socket.

Appeal by defendant from a judgment of the Municipal Court of the city of New York, borough of Manhattan, third district, in favor of the plaintiff upon the verdict of a jury.

Harry A. Talbot (Adolph F. Bruenner, of counsel), for appellant.

Gilbert &. Wessel (Harry N. Wessel, Francis J. Garcia, of counsel), for respondent.

Shearn, J. This action was brought to recover a loss from burglary, alleged to be covered by an insurance policy. The policy indemnified the plaintiff: " For Direct Loss by Burglary * * * by any person or persons except the assured, or any of his employees or other person lawfully in said premises, who has made forcible and violent entrance upon the prem-

ises, or exit therefrom, of which force and violence there shall be visible evidence.'' Under the head of '' Special Agreements,'' the policy further provided: ''A. The company shall not be liable: * * * (2) For loss or damage unless there are visible marks on the premises of the actual force and violence used in making entry into the said premises or exit therefrom.''

The proof established the following facts: Plaintiff carried on the business of examining and sponging cloth in a loft on the second floor of Nos. 107–113 West Twenty-fifth street, borough of Manhattan. The loft is reached by two stairways, one located at the easterly side and the other at the westerly side thereof. The easterly stairway adjoins a passenger elevator, and the westerly stairway adjoins a freight elevator. There are four doors, one leading to each stairway and elevator. The doors leading to the freight elevator are double doors, secured as follows: at the top of the freight elevator on the left side there is a spring latch, the bolt of which slips into a groove in the upper casement; and there is a bar of heavy wood running across the center of both doors, either end of which fits into sockets in the casement at the extreme sides of the doors. The spring is a strong one and considerable force is required to pull the bolt down out of the socket. Thus the ordinary method of opening the freight elevator doors from the inside, so as to obtain access to the elevator, is to pull down the bolt, using sufficient force to withdraw it completely from the socket, and then to lift the heavy wooden bar from its sockets and lay it one side. On the evening of September 2, 1915, plaintiff had in its possession goods belonging to two customers, which merchandise was neatly stacked on skids and hand-trucks near the freight elevator doors ready for delivery the following morning. Plaintiff had in its employ one George A.

Supreme Court, Appellate Term, November, 1916.  [Vol. 97.

Schantz, who was the foreman of its examining department, and one Abraham Barziley, a driver. Schantz and Barziley were the last to leave plaintiff's place of business on the evening of September 2, 1915. Before leaving Schantz secured the windows, fastened the spring catch on the elevator doors, placed the wooden bar across them and locked the regular entrance doors. On the following morning Schantz returned to the premises between seven and seven-ten o'clock, being the first to reach the loft, to open it up. He entered the loft by turning the lock in the easterly door and found the loft " in a disorderly condition." The stacks of merchandise on the skids and trucks had been " knocked down " and were lying " all over the floor; " the freight elevator doors were ajar; and the cross bar was lying on the floor. Opening the door leading to the freight elevator Schantz found six pieces of the merchandise lying scattered in the downstairs hallway and four pieces were lying on a hand-truck in the elevator. There were some scratches on the door of the freight elevator around the latch, but no evidence was given showing whether the marks were old or recent, an important consideration where the latch had to be pulled down every time the doors were opened, an operation requiring considerable force.

The windows and the other doors leading to and from the loft showed no evidence of violence. How entrance was effected does not appear, but in the proof of loss plaintiff said: "As nearly as assured can now state, the entrance was effected by means of liquors or drugs given to the watchman in charge causing him to lose consciousness, the keys to said premises being extracted from his person and entrance effected during such period of unconsciousness by means of such keys or otherwise."

From this statement of facts, it must be apparent that the case falls squarely within the recent decision of the Court of Appeals in *Rosenthal* v. *American Bonding Co.*, 207 N. Y. 162. Concededly, there was no visible evidence of the use of force or violence in entering the premises. Was there any visible evidence of the use of force and violence in making exit from the premises? Respondent's counsel insists that there were seven different visible evidences of the use of force and violence in making exit from the premises. Four of these, namely, that the loft was locked the night before, that the elevator doors were found ajar, that the goods were found in disorder, and that some of the goods were found in the hallway and elevator, may be at once disposed of as falling within the class of evidence that tends to show a burglary but affords no proof whatever that violence was used in making exit. The locked doors could be unlocked with a key; the elevator doors which were ajar would be ajar if opened in the ordinary method from the inside; the disordered and scattered goods evidence only haste and carelessness of the thieves and throw no light on whether violence was used to force the elevator doors open. The fact that the wooden bar had been removed from its place and was found lying on the floor affords no evidence of violence, because all that any one had to do in order to open the door from the inside in the ordinary course was to draw the bolt and lift the bar out of the sockets and lay it aside. This course had to be followed by the plaintiff's employees in order to open the door in the daytime in the ordinary course of business, and the mere removal of the bar proves no violence. The main reliance of the respondent is that the bolt secured by the spring latch had been pulled out of its socket, " forced down," as Schantz testified. The characterization by the witness that it

was "forced down" adds nothing to the proof. It had to be pulled down to open the door and always required some strength or force to pull it out of its socket. In other words, the elevator door had been opened from the inside in the usual and ordinary manner, namely, by lifting the bar out of place and pulling the bolt down in the ordinary manner so as to release it from the socket. There is absolutely no difference between this and the ordinary operation of releasing a bolt on a door or turning a latch. The mere fact that the bolt was hard to push affords no evidence of violence having been used within the meaning of this policy. This is made so emphatic and plain by the opinion of Hiscock, J., in the *Rosenthal* case that it is superfluous to develop the argument further. The presence of scratches on the door near the latch is not sufficient to save the recovery. A scratch, of course, is a mark, but whether the marks are evidence of the use of violence in forcing the door is another matter. As hereinabove stated, there is no evidence that the marks or scratches were recent, and they are of no significance because no force or violence, as the terms are used in the policy and construed in the *Rosenthal* case, was necessary to open the door from the inside. It merely required releasing the bolt and laying aside the bar. It follows, therefore, that the plaintiff failed to establish the facts essential to a recovery under the policy. It is idle to argue that " the very purpose of the policy was to secure the plaintiff against loss by burglary " and " there is no question but that there was a burglary." That is an argument for laymen, whereas this is an action on a written contract the provisions of which have been construed by the highest court in this state, a construction which must be followed whatever one may think of the reasonableness or wisdom of the course pursued by insurance com-

panies in writing such limitations into their policies. The reason for these restrictions, which are couched in clear and unambiguous terms, is, of course, to protect the companies from what are commonly known as '' inside jobs '' and from the frauds that would inevitably result but for such protection.

Guy and Bijur, JJ., concur.

Judgment reversed and new trial ordered, with thirty dollars costs to appellant to abide event.