OFFUTT, et ux. v. LIBERTY MUTUAL INSURANCE CO.

[No. 365, September Term, 1967.]

*Decided November 7, 1968.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Cary M. Euwer,* with whom were *Frank B. Haskell, III* and *Mitchell, Clagett & Euwer* on the brief, for appellants.

*Francis J. Ford* for appellee.

SMITH, J., delivered the opinion of the Court. BARNES, J., dissented and filed a dissenting opinion. (See *infra* p. 270)

The sole question in this case is the interpretation of an insurance policy. Appellee (Liberty Mutual) issued a policy in-

suring certain personal property located in a truck owned by appellants (Offutt) against loss by theft. A part of the policy read:

> "It is understood and agreed that all vehicles used are of the enclosed body type and that all windows will be completely closed and all doors and exterior compartments closed and securely locked at all times when said vehicles are left unattended and contain the property insured hereunder. *This policy does not cover the risk of theft from unattended vehicles unless such theft is due to forcible entry (of which forcible entry there must be visible signs at point of entry)."* (emphasis added)

The uncontradicted evidence is that the vehicle in question was parked one evening. The windows were sealed and could not be opened. The doors were locked. The following morning it was discovered that certain tools had been stolen. The key-hole in the door on the passenger side was in a horizontal position. This is the position when the door is unlocked. When locked the key-hole is in a vertical or upright position. There was no evidence of entry into the vehicle other than through this door.

Verdict was returned in favor of Offutt by the jury. The lower court entered judgment in favor of Liberty Mutual on motion for judgment *n.o.v.* stating:

> "* * * [T]he words *'forcible entry (of which forcible entry there must be visible signs at point of entry)'* are clear and there is no basis to conclude that there is any ambiguity. Thus the meaning of these words is for the court to construe and not for the jury. Since the evidence disclosed no 'visible signs' at claimed point of entry, the case never should have gone to the jury." (emphasis in original)

It is contended in this Court that the provisions of the policy with reference to visible signs of forcible entry at the point of entry are satisfied by the fact that the lock or key-hole in the door on the passenger side of the vehicle was in a horizontal

position at the time the theft was discovered, thereby indicating by its position that the door was unlocked.

Offutt cites *Old Colony Ins. Co. v. Moskios,* 209 Md. 162, 120 A. 2d 678 (1956) in support of his position. In that case the provisions of the insurance policy read in part:

"* * * [S]uch entry shall be made by actual force and violence of which there shall be visible marks made by tools * * *."

We there said:

"The policy here does not stipulate that entry to the safe must be 'solely' and 'exclusively' by actual force and violence of which there shall be visible marks made by tools on the outer door, as in some burglary insurance policies. * * *

"The jury, looking at the evidence in a light most favorable to the plaintiffs, * * * could have found * * * [t]his tavern was broken into and the cash register tampered with. The safe had been locked * * *. There were sufficient marks on the inside door of the safe to prove that it had been sprung by force and violence. No one knew the combination except the appellees. There were chisel marks on the outer door where someone had tried to open it. The knob had been pulled and wrenched with a Stillson wrench. The dial on the combination had been struck several times with a hammer. Hammering has some effect on a safe lock. The safe was made only to withstand certain attempts at burglary. The marks being made by a chisel, a Stillson wrench, and a ball-peen hammer, this chiseling, wrenching, and hammering, aided the unlawful expert manipulation of the combination of the safe and were the means by which it was opened as in some of the cases quoted herein. Therefore, the plaintiffs, appellees, should recover under the policy." *Id.* at 174-175.

The facts of *Old Colony* are different from the facts in this case both as to the signs of force and the policy provisions.

The only other case originating in Maryland closely related to this case is that of *Leeds, Inc. v. Aetna Casualty & Surety Co.*, 40 F. Supp. 966 (D. Md. 1941). Judge Chesnut there had before him a case involving a theft from plaintiffs' premises. The policy in force covered all losses by burglary "occasioned by any person or persons making felonious entry into such premises by actual force and violence when such premises are not open for business, of which force and violence there shall be visible marks made upon the exterior of the premises at the place of such entry by tools, explosives, electricity or chemicals". The perpetrators of the theft apparently were locked into the building. Therefore, they did not gain entry from the exterior. It was there held that there was no coverage, since the policy clearly showed that the insurer accepted the risk of a breaking from the exterior only.

In *Abrams v. National Fire Ins. Co. of Hartford, Conn.*, 186 A. 2d 232 (D. C. 1962) the Court was concerned with a theft from an automobile. It was claimed that goods were stolen from the locked luggage compartment of the automobile. The policy provision stated that the policy was inapplicable to the theft of property "while unattended in or on any automobile, * * * unless the loss is the result of forcible entry * * * of which entry there are visible marks upon the exterior of said vehicle." The facts showed the trunk handle was in the "open" position when first discovered and that there was a broken collar in the locking mechanism. In holding that the external visible sign or mark above (i.e. the position of the handle) was not sufficient to indicate a forcible entry, even though it was conceded that force was applied to gain entry, the court stated:

> "* * * [T]he luggage compartment handle could be considered a visible mark on the exterior of the vehicle, *but it was not a sign of forcible entry;* the broken collar could be considered a mark of forcible entry, but it was not visible on the exterior of the vehicle. The loss therefore was not within the coverage of the policy." *Id.* at 233. (emphasis added)

In *Rosenthal v. American Bonding Co.*, 207 N. Y. 162, 100 N. E. 716 (1912) a burglary policy required visible evidence

of "* * * forcible and violent entrance upon the premises, or exit therefrom * * *" and "* * * visible marks upon the premises of the actual force and violence used in making entry into the said premises or exit therefrom." The court there said:

> "It is, however, urged that this requirement is of evidentiary facts which might be a protection against fraudulent claims and that there is no necessity for such safeguard in the case of a claim whose merits are supported by ample testimony of another character; that the interpretation urged by appellant [the insurer] would prevent recovery in many meritorious cases, and, therefore, it should be rejected and some other one be adopted which will serve the insured. Doubtless the justice of the provision would be a subject for debate and disagreement between the parties to the contract. Quite possibly the interpretation which has been outlined might prevent recovery at times on *bona fide* losses. On the other hand, quite commonly an entrance into a building for burglarious purposes which was accompanied by 'actual force and violence' would not be made during business hours by opening an unlocked door, but would be effected by methods which would leave marks upon the premises which would be quite respectable evidence that a burglary had been committed within the indemnity of the policy. But these considerations on one side or the other are not before us in this case. If the parties to a contract adopt a provision which contravenes no principle of public policy and contains no element of ambiguity the courts have no right to relieve one of them from disadvantageous terms which he has actually made, by a process of interpretation. It may be conceded that if a policy of insurance is of doubtful tenor the courts should employ that interpretation which is the more exacting against the insurer who has prepared the contract. But if the contract is not of uncertain meaning, as has often been said, the courts may not make a new one under the guise of construction.
>
> "In this instance the insurer had a perfect right if

it saw fit to require proof even of so-called evidentiary facts as an indispensable basis for recovery. The only inquiry can be whether the parties have assented to the incorporation in their agreement of a provision which clearly calls for such proofs of their alleged loss which the plaintiffs have not furnished. * * *" *Id.* at 168-169.

In *Shattuck & Jones, Inc. v. The Travelers Indemnity Co.,* 323 Mass. 146, 80 N. E. 2d 313 (1948) the policy insured against loss by larceny from the premises "by any person or persons making felonious entry into the premises by actual force and violence when the premises are not open for business, of which force and violence there shall be visible marks made upon the exterior of the premises at the place of such entry by tools, explosives, electricity or chemicals." Evidence showed a rear door divided in two parts. A bolt about six inches long ran horizontally on the inside of the door and fastened the two parts together. It was old and corroded. The wood of the door at the junction of the two parts was worn and light from the outside shone through. The door was found partly open after having been closed and bolted the night before. That morning for the first time scratches were found one-half to three-quarters of an inch long on the underside of the bolt, but there was no evidence they were fresh scratches or that anyone had examined the bolt before. There was nothing to show that the scratches could not have been caused by the working of the bolt in the bands that held it to the door. The court said:

> "We assume that the ordinary manipulating of the bolt to open the rear door satisfied the requirement of 'actual force and violence.' [citing authorities]
>
> "But under the policy it was not enough that there be 'visible marks' of 'force and violence.' Those marks had to be made, so far as this case is concerned, by 'tools.' In this case we think there was no evidence that the scratches on the underside of the bolt were made by 'tools.' For all that appears those scratches may have been made by the ordinary manual operation of the bolt in the bands that held it to the door. * * *" *Id.* at 147.

We have previously held that, in the interpretation of the language of insurance contracts, words are to be given their customary and normal meanings. *Harleysville Mut. Cas. Co. v. Harris & Brooks, Inc.,* 248 Md. 148, 151, 235 A. 2d 556 (1967) and cases there cited. Cf. *Fidelity & Dep. Co. v. Panitz,* 142 Md. 300, 120 A. 713 (1923) where we held a burglary policy pertaining to the interior of a home not applicable to the loss of a lady's fur coat stolen from a second floor porch accessible only from the interior of the building.

The force here used, if there were force, was only such force as was necessary to either insert a key into the lock or to pick the lock. Burton argues that this is force. The language of the policy, however, speaks not of "force," but of "forcible entry." "Forcible" is defined in *Webster's Third New International Dictionary* (1961) as "1. effected by force used against opposition or resistance: obtained by compulsion or violence (a forcible entry)."

The *Random House Dictionary of the English Language* (1967) defines "forcible" as "1. effected by force: *forcible entry into a house.* * * * 4. characterized by the use of force or violence." (emphasis in original)

In the case of *United Sponging Co. v. Preferred Acc. Ins. Co.,* 97 Misc. 396, 161 N.Y.S. 309 (1916) aff'd 179 App. Div. 884, 165 N.Y.S. 1116 (1917), the policy in question covered the plaintiff "[f]or direct loss by burglary * * * by any person or persons * * * who has made forcible and violent entrance upon the premises, or exit therefrom, of which force and violence there shall be visible evidence." The facts indicated that there were no signs or marks of forcible entry at any of the entrances to the premises. The plaintiff contended that considerable force was required to release the bolt or latch to an elevator through which ultimate entrance was gained. The court pointed out that no more force was applied than is usual in opening the door. Thus, in rejecting the plaintiff's theory of recovery, the court said:

> "* * *. The main reliance of the respondent is that the bolt secured by the spring latch had been pulled out of its socket, 'forced down', as Schantz testified. The characterization by the witness that it was 'forced

down' adds nothing to the proof. It had to be pulled down to open the door and always required some strength or force to pull it out of its socket. In other words, the elevator door had been opened from the inside in the usual and ordinary manner, namely, by lifting the bar out of place and pulling the bolt down in the ordinary manner, so as to release it from the socket. There is absolutely no difference between this and the ordinary operation of releasing a bolt on a door or turning a latch. The mere fact that the bolt was hard to push affords no evidence of violence having been used within the meaning of this policy." *Id.* at 399-400.

Applying the above definitions and the reasoning of *United Sponging, supra,* we cannot conclude that picking a lock or using a master key constitutes "forcible entry" as the term is commonly understood. If we were to assume, *arguendo,* that picking a lock or using a master key would be forcible entry within the meaning of the policy we still would be faced with the fact that the only *visible sign* of this forcible entry at the point of entry was the lock or key-hole found in a horizontal or unlocked position. This certainly is not the type of sign commonly understood by the term. It is a sign more consistent with oversight than with forcible entry. The policy did not insure against *surreptitious* entry nor against oversight, but against *forcible* entry. The policy was not intended to cover all risks. The premium was undoubtedly set accordingly. As our present Chief Judge said in the dissenting opinion in *Old Colony Ins. Co. v. Moskios, supra*:

"One usually gets in this life only what he pays for. Insurance coverage is no exception. * * *" *Id.* at 177.

The policy is plain and clear on its face. To paraphrase *Rosenthal, supra,* we have no right to relieve one of the parties from disadvantageous terms by process of interpretation. We may not make a new contract under guise of construction. The parties clearly contracted as to the circumstances which Liberty Mutual would be liable. We see no liability on these facts.

*Judgment affirmed, with costs.*

Barnes, J., dissenting:

I dissent in this case because, in my opinion, the insured established that there was both a "forcible entry" into the truck and "visible signs" of this forcible entry at the point of entry. The relevant portion of the policy first quoted in the majority opinion must be construed as an entirety. See *Gottlieb v. American Automobile Ins. Co.,* 177 Md. 32, 38, 7 A. 2d 182, 185 (1939). Its purpose is to require that the insured securely locks the truck and completely closes all windows, when leaving the vehicle unattended. It is obvious that this requirement substantially reduces the risk of theft from unattended vehicles and is an important limitation on the coverage afforded by the policy. The purpose of the last sentence in the quoted portion of the policy is to reinforce the basic requirement that the vehicle be completely closed and locked and therefore requires that the theft result from a "forcible entry" of which there is a "visible sign" at the point of entry. This provision was apparently inserted to assure that there will be some objective proof that the truck was completely closed and locked as required and to protect the insurance company from possible negligence or fraud on the part of the insured. This provision of the policy, however, does not state (a) the *amount* of force required for the entry or (b) how graphically the "sign" must appear to the eye. The insured, therefore, need only prove that "force" *of any amount* was used to effectuate the entry and substantiate this by showing that there was a "sign" of the use of that force at the point of entry which was "visible." It is clear to me that force in some amount, however slight, *is necessary* to turn the lock in the door of the truck whether by the use of a skeleton key or by some other mechanical means and that the result of the use of that force, i.e., the change of position of the lock from a vertical to a horizontal position, was a "sign" which was "visible," at the point of entry. Inasmuch as the stipulated facts establish that the windows were completely closed, that the truck was securely locked when left unattended by the insured, and that there is no fraud or collusion on the part of the insured, it reasonably follows that a third person did use force to turn the

locked truck and stole the tools in question. This conclusion is corroborated by the physical evidence of forcible entry visibly apparent at the point of entry, viz., the change in position of the lock on the door of the truck. Thus there was proof by the insured in the exact terms of the policy and, in my opinion, the insured established a case of coverage under the policy.

As the majority points out, one of the meanings of "forcible" is "effected by force." If one turns to the definition of "force" one finds that one of its meanings in Webster's New Twentieth Century Dictionary, 715 (2nd Ed. 1964) unabridged, is "in physics, the cause of motion, or of change or stoppage of motion, of a body," with a subdivision *"animal force;* muscular power." It thus appears that the use of a skeleton key or other mechanical means to turn the lock required the use of "force" and that an entry by the use of such means was a "forcible entry." As Mr. Justice O'Connor of the Appellate Court of Illinois, First District, aptly stated in *Bernard v. Employees Liability Assurance Corp.,* 233 Ill. App. 229, 235 (1924): "No one would contend that it did not take *force* to throw a bolt back into a lock, *even if a key be used in doing it."* (Emphasis supplied.) (Quoting *National Surety Co. v. Silverberg Bros.,* 176 S. W. 97, 98 (Tex. Civ. App. 1915))

The draftsman of the policy undoubtedly could have specified the *degree* of force, e.g., by requiring entry with "great" or "substantial" force, or have provided that there be *"violent* entry", but this was not done. It could also have been provided that the forcible entry should be shown by some "visible *marks"* as many policies have provided and thereby bring the present policy within the purview of the many cases construing such language, but again this was not done.

The majority suggests, quite properly, that we are not at liberty to "make a new contract under guise of construction," but alas, as I see it, this is what the majority has done in this case, so that the words of the insurance contract "forcible entry" have become *"violent* entry" or "entry with *substantial force"* and the words "visible *signs"* have become "visible *marks."* To me, the words used in the policy are clear and unambiguous, but if there is any ambiguity, it should be resolved *liberally in favor of the insured* and *against* the insurer, who drafted the provision in

question. *Lowitt v. Pearsall Chemical Corp.*, 242 Md. 245, 259, 219 A. 2d 67, 75-76 (1966) ; *Aviation Employees Ins. Co. v. Barclay*, 237 Md. 318, 323, 206 A. 2d 119, 121 (1965) ; *Indemnity Ins. Co. v. Sloan*, 68 F. 2d 222, 225 (4th Cir. 1934), *cert. denied* 292 U. S. 625, 54 S. Ct. 630, 78 L. Ed. 1480 (1924).

As I have indicated, in my opinion, the "visible marks" cases cited by the majority are not apposite as the language in the policy in the present case is "visible signs" and not "visible marks." There may well be no "mark" in the instant case, but there is a "sign"—the turned position of the lock.

It is quite true as the majority points out that the policy is not an "all risk" policy, but as I see it, the insured in this case has established a loss on a risk clearly covered by the language of the policy and he should have the benefit of the coverage for which he paid.

I would reverse.