Herbert B. Evans, J.
The plaintiffs doing business under the name and style of Klein & Brown, Inc., sue to recover for the loss of a large number of valuable fur skins from premises 352-354 Seventh Avenue, their place of business, for which loss plaintiffs allege they were insured by the defendant under its policy of burglary insurance.
The defendant’s answer consisted of a “General Denial” and, as a complete affirmative defense, the defendant claims that *396 plaintiff’s alleged loss was not covered "by its policy because it was not the result of a burglary within the meaning or definition set forth in indorsement number “ 3 ” of the policy.
The proof presentéd at the trial established the following facts:
(a) Indorsement number “3” of the policy defined ‘ ‘ burglary ” insofar as it affects this case, to mean: “ The felonious abstraction of insured property (1) from within the premises by a person making felonious entry therein by actual force and violence, of which force and violence there are visible marks made by tools, explosives, electricity or chemicals upon, or physical damage to, the exterior of the premises at the place of entry.”
(b) Entrance into plaintiff’s premises from the public hall is by way of a single metal door secured by two locks, i.e., a Segal cylinder drop-bolt type lock and a doorknob type lock.
(e) On Friday, January 12,1968 at about 6:00 p.m. the premises were locked, the burglar alarm set and both plaintiffs left together.
(d) On Friday, January 12, 1968 at about 6:14 p.m. a signal received at the Holmes Electric Protective Company central control point indicated that the entrance door to the plaintiff’s premises had been opened.
(e) On Friday, January 12, 1968 at about 6:42 p.m. a Holmes guard and a New York City policeman arrived at the plaintiff’s place of business. They found the entrance door locked. Using keys in the custody of the Holmes agency, they entered and inspected the premises. They observed no disorder or other evidence of a burglary.
(f) On Friday, January 12,1968 at about 7:06 p.m., the Holmes guard reset the alarm on plaintiff’s premises, locked both locks of the entrance door and departed.
(g) - On Saturday, January 13, 1968 at about 7:30 a.m., Mr. Brown, one of the plaintiffs returned to the premises, had some difficulty opening the locks and upon entering discovered that certain fur skins that had been left on the premises the previous night, were missing.
(h) A detective from the Safe, Loft and Burglary Squad of the New York City Police Department was assigned to the case. During the course of his investigation, he obtained custody of the cylinder from the Segal lock of the entrance door and delivered it to the police laboratory for closer examination.
(i) The total value of the skins alleged to have been taken from plaintiff’s premises was $9,103.43.
*397 (j) 103 of the missing fur skins were found in a public area of the sixth floor of the same building in which plaintiff’s premises were located, on the evening of January 12, 1968 by the same policeman who, earlier that evening, had visited and inspected plaintiff’s premises with the Holmes guard. .
(k) Plaintiff did not learn that a portion of the missing skins had been recovered until many months later.
(l) The value of the recovered skins was $2,433.75.
(m) At the police laboratory, a microscopic examination of the Segal lock cylinder revealed “numerous,” “pronounced,” and “ distinctive ” scratch marks on the followers and an official Police Department report contained the opinion “ that pick-locks were used to effect entry into plaintiff’s premises.”
Before the plaintiff may recover through this action, the competent evidence adduced by them at the trial must establish as matters of fact, 1) that there was a felonious abstraction of plaintiff’s skins from their premises, 2) that the theft was accomplished by felonious entry, 3) that such felonious entry was completed by means of actual force and violence, and 4) that evidence of such force and violence in the form of visible marks made by tools, explosives, electricity or chemicals must exist upon the exterior of the premises at the point of entry. Unless all of these elements are established, there can be no proof of a burglary as the crime is defined in the indorsement limiting liability.
Beview of all the evidence before me brings into full focus the central issue to be resolved. Expressed in simplest terms, it is: Does felonious entry accomplished by picking a lock in the door at the place of entry where visible marks evidencing the picking operation, although microscopic in dimension and observed on the followers of the cylinder of the Segal lock that was functional and locked at the time of entry satisfy the relevant part of the definition of “ Burglary ” that controls plaintiff’s right to recover under the policy in evidence.
Litigation of claims involving interpretation and construction ■of the language embodying policies of the type with which we are concerned here, has produced a number of guidelines now well fixed in the law. It is well settled that a felonious abstraction cannot be presumed, nor can it be inferred from a mere loss. However, an insured is not required to show by direct evidence a felonious abstraction of his property. It is enough if an insured shows circumstances sufficient to raise an inference that his property was feloniously abstracted. (Stich v. Fidelity & Deposit Co. of Maryland, 159 N. Y. S. 712; Haas v. Fidelity *398 & Deposit Co., 97 Misc. 4.) Accordingly, I find that the plaintiff has sustained the burden of proof that there was a felonious abstraction of the property claimed to have been lost as the result of a burglary.
In dealing with the more troublesome issues specifically related to the detailed manner in which the abstraction was accomplished, we find that the facts and circumstances of this particular case do not fit easily into a pattern designed by precedent. However, significant guidance may be found in that source to the following extent: 1) that the clause in a policy of burglary insurance restricting liability inter alia to a situation where visible marks evidence the use of force and violence, being contractual in nature and unambiguous, is not subject to the general principle that the insurance policy will be construed most favorably to the insured. (Lee v. Preferred Acc. Ins. Co., 216 App. Div. 453.) 2) Nevertheless, such clauses are susceptible to and must be given a reasonable construction. (Fanwick v. Globe & Rutgers Fire Ins. Co., 229 App. Div. 315.) 3) The words and language of such a clause retain the meaning ordinary usage has given them in contrast to that applied to them to satisfy some technical legal definition. (Rosenthal v. American Bonding Co., 207 N. Y. 162.)
Although these rules of construction are the end product of many opinions preceding this one including some emanating from the highest court of our State, this court believes that the burden thus imposed upon the plaintiff to prove his case in full conformity to them should not be so weighted by this aspect of interpretation and construction as to constrict the flow of reasonable regard for the rights and interests of all the parties in equal degree. In this connection, a consideration of manifest validity is to be found in the opinion of Judge Sheabn where it states: 11 The reason for these restrictions, which are couched in clear, unambiguous terms is, of course, to protect the companies from what are commonly known as ‘ inside jobs ’ and from frauds that inevitably result but for .such protection.” (United Sponging Co. v. Preferred Acc. Ins. Co., 97 Misc. 396, 401.)
Oast in the light of all the foregoing the facts developed from the evidence and the distinguishing circumstances of this case must provide the answer to many questions. First, was there a felonious entry by force and violence in this case? In answer, the court finds the opinion stated in the official report of the Police Department that entry was gained into plaintiff’s premises by picking the lock of the entrance door sufficient basis for regarding that burglarious technique as the one used in this *399 ease. The evidence does not include any challenge of this expert opinion by the defendant. "While explicit provisions of the policy require that the felonious entry must be effected by force and violence, the qualitative and quantitative definition of such force and violence is not so specified. Therefore, whether or not the degree or extent to which these elements are manifest in any given case satisfies the language of the policy is an issue of fact. (Cherry Creek Nat. Bank v. Fidelity & Cas. Co., 207 App. Div. 787.) Force and violence are not absolute concepts of applied energy. Their meaning in every situation, derives from a relationship to the object toward which it is directed. An infant’s breath can do violence to a feather, and a strong man’s slap against the hide of an elephant could be received as a caress. It is the opinion of this court that the picking of the lock done with some type of instrumentality and used with sufficient force to leave “ numerous,” “pronounced” and “distinctive ” marks on the metal followers of the cylinder in question amounts to force and violence within the meaning of the pertinent language of the policy. These marks as visible traces upon the premises themselves having survived the act that produced them and being seen are declared to be evidence of a burglary and define the character of the force and violence used to create them and brings it within the rule of law stated in the leading case of Rosenthal v. American Bonding Co. (207 N. Y. 162, supra). In making its determination of this issue, the court is mindful of the distinction between the definition of forcible entry expressed in the Penal Law which makes picking a lock an act of forcible entry, and the meaning of the terms force and violence where they appear definitively with regard to the concept of burglary as set forth in a policy of insurance.
The next question to be answered is: Does the evidence in this case establish that the felonious entry with force and violence was accomplished by the use of a tool in such a manner as to have left visible marks or physical damage to the exterior of plaintiff’s premises at the place of entry? Having adopted the opinion of the lock expert of the Police Department that such entry was effected by picking the lock, this court has no difficulty in reaching the conclusion that this nefarious operation involved the use of specially designed tools, i.e., pick locks. I am satisfied, too, that the marks found on the followers of the cylinder from plaintiff’s Segal lock resulted from the use of this tool upon it. The fact that these “ numerous,” “ pronounced ” and “ distinctive ” marks were not discernible until revealed by microscopic examination raises the further question as to whether or not they were, nevertheless, visible within the meaning of that term *400 where it appears in the language of the policy. It is the opinion of this court that the fact that those marks were not observed and indeed could not have been discovered at all except by the use of a microscope, is irrelevant to the issue of their visibility. Adhering to the rule of construction that requires application of their ordinary meaning to the words used in the definition clause of the policy, the word “ visible ” means capable of being seen as distinguished from actually being .seen. A microscope in no way creates or modifies the true nature, structure, or quality of what is perceived through its lenses. This scientific instrument only broadens the sight capacity of the beholder while the inherent visibility of the object thus beheld remains constant and fixed.
It is necessary now to consider whether or not these marks having been found on the followers of a cylinder of a lock from the entrance door of plaintiff’s premises may be regarded as appearing on the exterior of plaintiff’s premises at the place of the felonious entry. This Segal cylinder lock as it was installed, became an integral part of the total movable barrier between plaintiff’s premises and the public area from which they are entered, i.e., the metal door. The cylinder itself and the followers upon which the marks were found were most certainly an integral part of the lock. The lock itself, designed purposely to be accessible from the outside of the door, may reasonably be considered part of the total exterior portion of plaintiff’s premises and this court so finds. Although there was testimony concerning other alleged significant marks on the exterior of the premises at the place of entry, it was so directly contradictory as to have raised a clear issue of credibility. Because of the critical relevance of preponderant evidentiary facts otherwise, this court did not find it necessary to resolve that issue before reaching its ultimate decision in this case.
It is true that the evidence has not provided an equal number of answers to the many questions it raised, but it is unnecessary and it would be inappropriate for this court to seek them elsewhere.
In view of all of thé foregoing, this court finds that there was a felonious abstraction of plaintiff’s property under such circumstances as fully support their right to recover under the policy in evidence.
Accordingly, I find judgment for the plaintiff for the amount of $6,669.68.