Weldcraft Equipment Company, Appellant, *v.*
Crum & Forster Insurance Companies.

Argued April 13, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*James Victor Voss,* with him *Joseph T. Kosek, Jr.,* and *Neely and Voss,* for appellant.

*John E. Hall,* with him *Meyer, Darragh, Buckler, Bebenek & Eck,* for appellee.

OPINION BY SPAETH, J., November 16, 1973:

This is an action on a burglary insurance policy to recover for the loss of insured property. After a non-jury trial the court below entered a verdict, and after dismissing exceptions, a judgment, in favor of the carrier.

422

The policy defines "burglary" as "[t]he felonious abstraction of insured property (1) from within the premises by a person making felonious entry therein by actual force and violence, of which force and violence there are visible marks made by tools, explosives, electricity or chemicals upon, or physical damage to the exterior of the premises at the place of such entry . . . ."

The evidence offered by appellant, the insured owner, consisted of testimony by its President, John E. Fitzgerald, and its Vice President and General Manager, Joseph P. Kaniecki. Fitzgerald testified on direct examination that he was the last to leave on October 9th; that he had locked all of the doors and could account for all of the keys; that when he returned the morning of October 10th he found a door "ajar" with "scratches" on the tongue and "little nicks" on the door; and that "[t]o the best of [his] knowledge" the nicks were not there when he had left the evening before. On cross-examination the following occurred: "Q. Mr. Fitzgerald, do you recall telling the investigator from the defendant that when I checked the door after finding it opened, the lock was still locked. In my opinion entry was gained by picking the lock. The door has been checked carefully, and there is no damage to the metal door or jam [sic]. Here in Court today you are saying that there were scratches on the right side of the door, is that right? A. On the tongue and then on the edge there was just marks. Q. When did you discover those scratches? A. That Saturday morning. Q. You didn't relate those scratches to our investigator when the statement was taken, is that right? A. Yes. I asked him what he meant by damage. He said there is obviously the door hasn't been pushed, pulled. The only thing I see are the scratches." Kaniecki testified that he had arrived on October 10th after Fitzgerald. His testimony continued: "Q. What did you observe when you examined the door? A. Out-

side of the scratches on the door, I would say there was no damage or anything else done. Basically we were trying to find out how entry was made, and the door itself is a grey painted metal, sort of dirtied, and you could see that there were marks on the door. Q. Did you see them on that Monday? A. Yes, sir. Q. Prior to that time, had you ever observed any marks on the door? A. No, sir." It was stipulated that $1,400 worth of equipment was missing.

The evidence offered by the carrier was limited to the written statement that Fitzgerald had given the investigator and to testimony by an underwriter. The underwriter had never seen the premises; he testified that the policy at issue was "a standard form" and contained "a normal definition as far as I am aware of all burglary and theft policies."

In entering a verdict for the carrier, and in dismissing exceptions, the court below filed no findings of fact or conclusions of law. In the opinion filed in response to the appeal to this court the court below states:

"Plaintiff produced testimony that its owner, John E. Fitzgerald, discovered on the morning of October 10 a door to the premises open and the above-mentioned items missing. The owner also testified that he observed 'little marks on the door.' Defendant, however, introduced into evidence a statement written by an insurance investigator and signed by the owner saying that in the owner's opinion entry was gained by picking the lock and, after having checked carefully, there was no damage to the door.

"Defendant does not contend that plaintiff's premises were not burglarized but only that the loss is not covered under the definition of burglary by forcible entry. We agree.

"The owner's statement to the investigator, given shortly after the loss was discovered, is given more credence than the owner's testimony at the trial, after

having been informed that the loss did not meet the terms of the policy.

"Even if the court were to accept the owner's testimony of marks on the door, we find as a fact that the loss is still not recoverable under the policy. According to the definition of burglary contained in the policy, there must be visible evidence of 'actual force and violence' for coverage to be provided. 'Little marks,' as testified by the owner, would fall short of 'actual force and violence' and would come within the specific definition of burglary as defined in the contract. It is concluded, therefore, that there was no breach of contract and the plaintiff is not entitled to recover."

The difficulty with this statement is that it does not reveal the basis for the court's verdict and its dismissal of the exceptions. Apparently the court found that the lock had been picked and the premises burglarized. It is not apparent, however, whether the court found that marks were made incident to the picking. Although the court expresses some skepticism regarding Fitzgerald's testimony that there were marks, it does not comment on Kaniecki's testimony that there were. Nor does it comment on the fact that the carrier did not call its investigator, who according to Fitzgerald had said, "The only thing I see are the scratches." Presumably the investigator had examined the door and if there were no marks could have testified that there were not. A fair reading of the court's opinion suggests that the court considered that it did not have to decide whether there were marks because, in its view, even if there were, the owner could not recover. For reasons that will appear, this was error. If there were no marks, appellant as owner is not entitled to recover, but if there were, it is.

The purpose of a burglary provision such as the one at issue is to enable the carrier to offer a less comprehensive policy to the insured at a correspondingly low-

er cost. In limiting coverage to forcible entry physical evidence of which is required, the carrier protects itself "from what commonly are known as 'inside jobs' and from the frauds that would inevitably result if some physical evidence of break-in were not required." *Kretschmer's House of Appliances v. United States Fidelity & Guaranty Co.*, 410 S.W. 2d 617, 618-19 (Ky. 1966). *See Schoenfeld v. Royal Indemnity Co.*, 76 Pa. Superior Ct. 299 (1921).

If the lock is picked, the first condition of the policy, that "entry [be] . . . by actual force and violence," is met. In a literal sense, "force" must be applied to move the lock no matter what means is employed. Even if the key designed to fit the lock is used, there has been an application of "force". By coupling "force" with "violence" the policy implies that the application of force must be illegitimate in nature. The policy does not, however, prescribe that any particular degree of force must be used. Consequently there is no warrant for the conclusion by the court below that " '[l]ittle marks' . . . would fall short of 'actual force and violence' . . . ." If the carrier had wished to prescribe a degree of force, it could have; since it did not, no prescription favorable to the carrier will be implied, for the policy must be read against the carrier. *MacDonald v. Metropolitan Life Ins. Co.*, 304 Pa. 213, 155 A. 491 (1931) ; *Lucas v. John Hancock Mutual Life Ins. Co.*, 116 Pa. Superior Ct. 298, 176 A. 514 (1935) ; *Lentin v. Continental Assurance Co.*, 412 Ill. 158, 105 N.E. 2d 735 (1952).

The second condition of the policy is that as a result of the forcible entry "there are visible marks made by tools, explosions, electricity or chemicals upon, or physical damage to the exterior of the premises at the place of . . . entry . . . ." As is the case with respect to the degree of force required, there is no prescription with respect to the extent of the marks required, and none

will be found implied. Whether the marks are "little", or "scratches", or "little nicks", is immaterial; the only prescription is that they be "visible" and have resulted from the forcible entry.

*See generally Klein & Brown, Inc. v. Fidelity & Deposit Co. of Md.*, 59 Misc. 2d 395, 299 N.Y.S. 2d 298 (1969), *rev'd on other grounds*, 316 N.Y.S. 2d 552 (App. Div. 1970) (holding that entry by picking a lock is by "force and violence" within a similar insurance clause). *But see Offutt v. Liberty Mut. Ins. Co.*, 251 Md. 262, 247 A. 2d 272 (1968). *And Wagner v. London Guaranty & Accident Co. Ltd.*, 86 Pa. Superior Ct. 542 (1926).

It follows that the judgment must be vacated and the matter remanded so that the court below may determine whether there were visible marks resulting from the lock's having been picked, and may enter judgment accordingly.