**Philmore ROSS, d/b/a The Canterbury Shop**

v.

**The TRAVELERS INDEMNITY COMPANY.**

Supreme Judicial Court of Maine.

Oct. 2, 1974.

Fitzgerald, Donovan & Conley, P.A., by Daniel R. Donovan, Duane D. Fitzgerald, Bath, for plaintiff.

Preti & Flaherty, by John J. Flaherty, Frederick A. Johnson, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

The Canterbury Shop was a clothing store owned and operated by the plaintiff. The defendant insured this business and included in the policy was an indemnity covering burglary. This complaint sought recovery for merchandise burglariously stolen and for "business interruption" losses resulting therefrom. Following a jury trial the plaintiff received a verdict of $16,850.00 but, on defendant's motion for judgment n.o.v.,[1] this award was set aside and judgment was ordered for the defendant. The plaintiff appealed and the defendant then entered a cross-appeal premised on a refusal to grant "a directed verdict on the issues of the business interruption on the grounds that the plaintiff has failed to prove his loss in accordance with the terms of the policy."

We sustain the plaintiff's appeal, deny the defendant's cross-appeal, and order the verdict and judgment for the plaintiff reinstated.

On the evening of August 6, 1971, at 9:00 p.m., the store was secured and either later that evening or early the following morning thieves gained entrance to the premises and removed clothing which had a stipulated value of $14,452.00. The record demonstrated that the thieves made their exit through a rear door, and the prime issue is whether this burglarious *exit* was accomplished in such a manner as to impose liability under the terms of the insurance policy.

The essential facts are not in dispute.

In the rear of the building there is a door which opens inward from an alley into a furnace room. This rear entrance is normally used to load, or unload, materials from some type of vehicle. The furnace room opens into a storage area, which is to the rear of the sales area. This rear door was protected against inward pressure by two wooden bars of the size usually spoken of as "2 x 4s." Metal brackets were affixed to the wall of the premises on either side of this door and the "2 x 4s" were held in place by these brackets. To prevent them from being moved horizontally two spikes were driven into the bars so that they would fall on either side of the metal bracket. The spikes would not prevent the bars from being lifted vertically from the brackets.

The testimony indicated that when the premises were secured on August 6, these two bars had been properly positioned in the brackets but, following discovery of the burglary, the "2 x 4s" were found lying on the storeroom floor, as were two spikes which had been removed from one of the bars. Considering the size of the spikes and the way in which they were driven into the bar, it would obviously require the use of some type of tool such as a hammer or a pinch bar to remove them.

The defendant has argued that the evidence was insufficient to prove "actual force and violence as evidenced by . . . physical damage to the interior of the premises at the place of exit." The defendant theorizes that since the removal of the two bars merely required lifting them from the brackets, and the removal of the spikes was *unnecessary* to effectuate a felonious exit, the conditions of the policy have not been met. We disagree with this contention.

The pertinent provisions of the policy are:

"6. Burglary or Robbery: 'Burglary' means the felonious abstraction of in-

1. Rule 50(b), M.R.C.P.

sured property from within the premises by a person making felonious entry therein *or exit therefrom by actual force and violence as evidenced by visible marks made by tools,* explosives, electricity, or chemicals upon, *or physical damage to,* the exterior of the premises at the place of such entry, *or the interior of the premises at the place of such exit."* (Emphasis supplied.)

This quoted excerpt from the insuring document is a standard provision in such policies. See Annot., 169 A.L.R. 224. The purpose of such a provision is to

"protect the insurer from what commonly are known as 'inside jobs' and from the frauds that inevitably would result if some physical evidence of break-in were not required."

Kretschmer's House of App. v. United States F. & G. Co., 410 S.W.2d 617, 618–619 (Ky.1967); Limberis v. Aetna Casualty and Surety Company, 263 A.2d 83, 86 (Me.1970).

█ We note that the insuring document is silent as to whether it is *necessary* to use actual force and violence to accomplish a burglarious exit. We are mindful of the well established rule that any ambiguity in an insurance policy will be construed against the scrivener of the policy, namely, the insuring company. *Limberis,* 263 A.2d at 86.

If we assume that the force and violence used to accomplish a felonious exit must be evidenced by both visible tool markings and by physical damage to the interior of the premises at the place of exit, we feel that the plaintiff has done so.

█ The use of the expression "force and violence" in the policy does not require that any particular degree of force is a

prerequisite but only that whatever force was used must be illegitimate. Likewise, since the policy is silent with respect to the extent of the "visible marks" required and the physical damage to the interior of the premises, none will be implied. Therefore, neither the actual force used to remove the bars and the spikes therefrom nor the extent of the physical damage to the interior of the premises is controlling. Weldcraft Equipment Co. v. Crum & Forster Ins. Cos., 225 Pa.Super. 420, 312 A.2d 68 (1973).

Since the two bars with imbedded spikes constitute an integral part of the security system designed to protect the structure from a felonious entry, they must be viewed as a part of the total interior portion of the insured premises. Klein & Brown, Inc. v. Fidelity & Deposit Co. of Md., 59 Misc.2d 395, 299 N.Y.S.2d 298 (1969).

The removal of these spikes from the bar constituted physical damage to the interior of the premises since these bars constituted a part of the premises as did the two spikes. Furthermore, the holes left in the bar by the removal of the spikes constituted visible marks obviously made by a tool of the force and violence involved.

Since the policy itself does not specify that force and violence must be necessary to accomplish a burglarious exit, the fact that it was actually unnecessary to remove the spikes in order to open the rear door does not prohibit recovery under the policy. We are not inclined to read into the policy language a condition that the defendant did not see fit to incorporate therein.

██ We conclude that the Justice below was in error when he granted the motion for judgment n.o.v.[2]

---

2. The test used to determine the propriety of granting a motion for judgment n. o. v. is the same as that for granting a directed ver-

dict. Manchester v. Dugan, 247 A.2d 827 (Me.1968). We held in Boetsch v. Rockland Jaycees, 288 A.2d 102, 103 (Me.1972): "[I]n

We see nothing in this holding inconsistent with *Limberis*. There the evidence failed to disclose any "visible marks" evidencing force or violence to the insured vehicle, either on the exterior or interior thereof, as mandated by the insurance policy, and is readily distinguishable from the facts before us.

■ The cross-appeal is premised on the refusal of the Justice presiding to remove the business interruption claim from the jury. The appellee has argued that the entire evidence supporting this claim is based upon "speculation, surmise and guesswork."

The pertinent policy provisions are these:

"9. Coverage C—Business Interruption—

(a) The Travelers shall not be liable:

(2) for more than the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business . . . .

.    .    .    .    .    .

(d) Definitions—

(1) 'Gross earnings', when the Insured's income is derived principally from the sale of merchandise not manufactured by him, are defined as the sum of:

(a) total net sales . . . .
. . . less cost of:

merchandise sold, including packaging materials therefor; materials and supplies consumed directly in supplying any service sold by the Insured . . . .

No other costs shall be deducted in determining gross earnings.

.    .    .    .    .    .

(3) In determining gross earnings, due consideration shall be given to the experience of the business before the date of damage or destruction and the probable experience thereafter had no loss occurred."

The plaintiff introduced competent evidencing depicting the monthly gross income for the years 1970, 1971 and 1972. Additionally, the plaintiff testified as to the gross receipts starting with opening the store in the afternoon of the day the theft was discovered and thereafter until he was able to replace the merchandise which had been stolen. He was allowed to testify that in his judgment, based on the figures from past years, his gross volume substantially decreased during the two months following the burglary, estimating this shrinkage as between eight and ten thousand dollars. There was no testimony in the record specifically relating to such items as packaging materials or supplies consumed on the premises, nor had the plaintiff been cross-examined on this ground.

During a colloquy with counsel at the time the motion was under consideration, the Court addressed itself to this argument as it dealt with packaging materials or supplies consumed on the premises, commenting: "There aren't any, are there?", to which counsel responded: "There is no evidence of any, and there is no evidence that there weren't any."

We do not deem that the general nature of the testimony in support of the business interruption loss was overly speculative. The policy itself invites speculation by allowing "*due consideration*" to be given past business experience and "the probable experience thereafter had no loss occurred." This position is consistent with the general rule adopted by most jurisdictions, as follows:

"The courts have said that the loss of actual profits and business expenses cov-

testing the propriety of a directed verdict the evidence must be viewed in the light most favorable to the party against whom the verdict is directed, and if any reasonable view of the evidence will allow recovery, the jury should act upon it . . . . ."

ered by this type of insurance should be determined in a practical way, having regard for the nature of the business and the methods employed in its operation, and so as to give practical effect to the intentions of the parties and the purpose of the insurance as evidenced by the terms and provisions of the policy, *by applying the test of past experience and the probabilities of the future."* (Emphasis supplied.)

44 Am.Jur.2d, Insurance, § 1694 at 604; *see also* 83 A.L.R.2d 910, § 9(a).

Conjoined with the specific evidence of gross sales prior to and after the burglary, we feel the testimony of the plaintiff, standing unchallenged, supplied a proper base for jury consideration of the business interruption issue, namely:

"Q. And would you indicate to us what your cost is on a sale?

A. The cost would be 60%, approximately on the average."

If the cost of a sale (60%) did not include consumable store supplies and packaging (items which the Justice below obviously considered insignificant), cross-examination on the point would have been appropriate.[3]

We find no error in refusing to grant the requested motion.

The entry is:

Appeal of the plaintiff sustained. Cross-appeal of defendant denied. Judgment appealed from ordered reinstated.

All Justices concurring.

WERNICK, J., did not sit.

---

3. Since the defendant did not object when the Justice below instructed the jury on its approach to damages for business interruption, we doubt whether this contention was seriously pressed. The Justice below limited his instruction on this point as follows:
"If you find that he suffered a reduction of gross earnings resulting from the interruption of the business caused by the loss of his inventory, then you determine the loss of gross earnings to be the loss of gross sales less the cost of the merchandise. So, you simply determine on the basis of the evidence what—to what extent you find the plaintiff lost gross sales, gross dollar volume of sales, and deduct from that the cost of the merchandise since he would not have had that cost as a business profit, and award him what you find he is entitled to as lost earnings resulting from the business interruption."