Charles HOPSON, et al.,
Plaintiffs-Appellees,

v.

SOUTHERN AMERICAN INSURANCE
COMPANY, Defendant-Appellant.

Court of Appeals of Tennessee,
Eastern Section.

Dec. 19, 1980.

Permission to Appeal Denied by Supreme
Court July 13, 1981.

Joseph B. Yancey and Albert J. Harb,
Knoxville, for defendant-appellant.

Lee Dan Stone, III, Tazewell, for plain-
tiffs-appellees.

## OPINION

FRANKS, Judge.

Plaintiffs were awarded judgment for $15,900.00 by the chancellor, without a jury, for the burglary loss of the contents of their music and clothing store, located in New Tazewell, Tennessee. The award was based on a policy of insurance issued by defendant in force at the time of the loss, with coverage for burglary of $16,000.00 with $100.00 deductible.

On appeal, defendant insists that after demand for a jury in accordance with T.R. C.P., Rule 38.02, the chancellor erroneously refused the demand. The order denying the jury states, in part:

In this cause, it appearing from review of the pleadings that the evidence in this case will involve matters of a complicated, technical nature, and involve complicated accountings.

The pleadings established the suit was for breach of an insurance contract. The defendant was entitled to have a jury empanelled to try and determine any material fact in dispute. T.C.A., § 21–1–103. Plaintiffs do not seriously dispute defendant's right to a jury but insist that defendant's failure to object to the chancellor's summary denial of a jury amounted to a waiver of its right to a jury trial, citing *Agricultural Ins. Co. v. Holter*, 44 Tenn.App. 661, 318 S.W.2d 433 (1958).

A party waives right to a jury by failing to demand a jury in accordance with the Rules of Civil Procedure and once a demand for a jury has been properly made it may be withdrawn with the consent of all the parties as to whom issues have been joined. T.R.C.P., Rule 38.05. *Holter*, cited by plaintiffs, is not authority for their contention: in that case the plaintiffs formally waived their demand for a jury and the defendant raised no objection to the waiver. On ap-

peal, the defendant was held to have implicitly consented to the waiver by failing to seasonably object.

■ We conclude, however, the chancellor's denial of a trial by jury is harmless error. There is no conflicting evidence on the material issues. The amount of plaintiffs' loss is undisputed and exceeded the amount of coverage provided in the policy. The evidence relating to the policy defense is also undisputed. The issues before the chancellor, as well as this court, thus become questions of law. *Continental Ins. Co. v. Cooper*, 58 Tenn.App. 316, 430 S.W.2d 661 (1968). This issue is resolved against defendant.

The remaining issue is whether the policy of insurance issued to plaintiff by its terms insures against plaintiff's loss. The pertinent policy provision is:

M. Premises Burglary or Robbery:

1. Loss by burglary shall cover the felonious abstraction of insured property (1) from within the premises by a person making felonious entry therein by actual force and violence, of which force and violence there are visible marks made by tools, explosives, electricity or chemicals upon, or physical damage to, the exterior of the premises at the place of such entry, or (2) from within a showcase or show window outside the premises by a person making felonious entry into such showcase or show window by actual force and violence, of which force and violence there are visible marks thereon, or (3) from within the premises by a person making felonious exit therefrom by actual force and violence as evidenced by visible marks made by tools, explosives, electricity or chemicals upon, or physical damage to, the interior of the premises at the place of such exit.[1]

[1] This verbiage is basically the standard provision in burglary policies. *See* Annot., 169

On April 15, 1979, plaintiffs determined some items were missing from their store after a tape from their stock was found in a nearby alley. One of the plaintiffs reported the alleged robbery on April 16 to an officer of New Tazewell's police department, with advice that any unauthorized entry would have been with a key or by "picking" the lock. The police were asked to watch the store overnight. The store was closed at the normal closing time of 5:30 p. m., on April 16, and plaintiff, along with the store manager and others, locked the front door and put "scotch" or transparent tape round the door. The tape consisted of five strips, approximately 6 inches in length, placed across the door frame and door. The following morning, April 17, the chief of police discovered the front door open and unlocked with the contents missing. The pieces of tape had been pulled loose from the door. There were no broken windows, doors, locks or other indication of forced entry or exit. A careful inspection of the front door revealed no discernible markings on the exterior but the plaintiff described the lock on the interior side of the door thusly: "[T]here was little shavings like right in the key hole, and, maybe, some scratches around on the cylinder part." The lock was checked later that day by a locksmith who found the lock in good working order; the source of the scratches is not established in the record. There is testimony from plaintiffs' witnesses that the scratch marks could have been caused by a keyring rubbing the door as the lock was being unlocked or any number of other causes.

The chancellor, in determining coverage under the policy, stated:

[T]he City Policeman discovered the door standing open and the tape was off the door-facing. One officer testified there was marks on the lock on the inside.

It is my opinion that the marks on the lock and forcibly removing the tape satis-

A.L.R. 224 and later cases.

fies the requirements of the policy in view of the fact that the policy is construed most strongly in favor of the insured and considering the policy speaks in terms of "felonious entry" and in criminal law, the least breaking of the close is sufficient to constitute breaking and entering. The tape was obviously not strong enough to prevent entry but the removal constitutes "force and violence and is evidenced by visible marks."

The chancellor's comment that the policy must be construed most strongly in favor of the insured is not substantiated by the policy before us. The quoted provision as to the issue before us is unambiguous and does not justify the application of the general principle that the policy will be construed most favorably to the insured. *Artress v. State Farm Fire*, 221 Tenn. 636, 429 S.W.2d 430 (1968); 44 Am.Jur.2d, *Insurance*, § 1401. Plaintiffs in their brief do not argue the scratches on the lock on the inside of the door satisfy the policy requirements but contend, "that by putting the tape on the door for the purposes of securing same, and the breaking of the tape or pulling loose of the tape, which was affixed to the building constitutes sufficient force, and physical damage to the premise to bring the loss on the provisions of paragraph M of the appellants' policy." It is not clear what significance the chancellor attached to the "marks on the lock on the inside" but, since mention was made of the marks, we will first consider their significance.

The policy provision provides coverage for the contents removed from the building where the burglar either feloniously entered or exited the premises by actual force or violence. In addition, there must either be visible marks made by tools, explosives, electricity or other chemicals as a result of the force and violence, or physical damage to the exterior or interior of the premises at the place of such entry or exit. The presence of the scratches on the interior of the door can be accounted for in various ways. There is no evidence reasonably inferring

that a felon was secreted inside the premises at the time the door was locked at closing; moreover, visible marks of forceable or violent exit on the premises are not established by the unexplained scratches on the interior lock cylinder which was in good working order after the burglary. *See Gracey v. American Automobile Ins. Co.*, 188 Tenn. 230, 218 S.W.2d 735 (1949).

■ The evidence establishes, and the plaintiffs concede, there are no "visible marks made by tools, explosives, electricity or chemicals upon ... the exterior of the premises at the place of entry." Plaintiffs insist, however, that the pulling loose of the tape from the door when it was open constituted physical damage to the exterior of the premises and the opening of the door, whether by key or otherwise, constituted the force and violence to damage the exterior of the premises. While the argument has some appeal, on close analysis it is without merit, because the pulling loose or breaking of the tape does not constitute physical damage caused by actual force and violence to the exterior of the premises. The transparent tape placed at intervals across the front door of the building did not constitute the tape as part of the exterior of the premises. Plaintiff did state that one of the reasons for placing the tape on the door was to secure the door; however, for the removal of the tape to constitute damage to the exterior of the premises by force and violence the tape would have to be viewed as an integral part of the security system designed to protect the structure from felonious entry and as a part of the exterior of the insured premises. *See Ross v. Travelers Indemnity Company*, 325 A.2d 768 (Me.1974). The tape, in our view, does not meet this standard and the removal of the tape does not constitute physical damage to the exterior of the premises within the meaning of the policy provision.

The policy provision is a limitation on liability and the evidence does not bring the loss within the provided coverage. *Artress, supra.* Accordingly, the judgment of the

trial court is reversed and the cause remanded to the trial court for entry of an order of dismissal with costs incident to the appeal assessed against plaintiffs.

SANDERS and GODDARD, JJ., concur.

