CENTURY INDEMNITY COMPANY v. SCHMICK.

1. CONTRACTS—CONSTRUCTION OF CONTRACTS—INSURANCE—EXCLUSION CLAUSE—EMPLOYEE.

The liberal construction of workmen's compensation law in favor of the injured employee is not extended to exclusion clauses relative to employees in policies of insurance, since the insurer invariably drafts the contract of insurance and is therefore in a position to thoroughly understand its terms.

2. INSURANCE—CONSTRUCTION OF BURGLARY POLICY—EXCLUSION CLAUSE—EMPLOYEE.

Exclusion clause of burglary insurance policy relieving the insurer from liability for loss caused by "any dishonest, fraudulent or criminal act of the insured or of any officer, employee, partner, director, trustee or authorized representative" is construed as to an "employee" as meaning one who is active in the work for which the employee was employed and paid to do.

3. SAME—EXCLUSION CLAUSES.

It is incumbent upon an insurer who drafts its policies of insurance so to draft its policies as to make clear the extent of nonliability under exclusion clauses, in order to escape liability.

4. SAME—CONSTRUCTION OF POLICY.

An insurance policy that is drafted by an insurer must be given the construction of which it is susceptible most favorable to the insured.

5. SAME—BURGLARY INSURANCE—EXCLUSION FROM COVERAGE—CONSTRUCTION OF TERM "EMPLOYEE."

Loss from burglary by an employee of insured gasoline station operator, effected several hours after the closing of the station by other employees than the burglar, was not excluded from coverage by burglary policy relieving the insurer of liability

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 4, 6] 29 Am Jur, Insurance §§ 166, 167.
[2, 5] 29 Am Jur, Insurance § 1054.

for burglary by an employee, since the employee was not acting in the work he was employed and paid to do, not being an "employee," as the term was used in the contract of insurance, at the time of the burglary.

6. SAME—CONSTRUCTION OF POLICY—AMBIGUITY.

Any doubt or ambiguity with reference to a contract of insurance that is drafted by the insurer should be construed most favorably to the insured.

Appeal from Saginaw; O'Neill (James E.), J. Submitted January 16, 1958. (Docket No. 16, Calendar No. 47,036.) Decided March 6, 1958.

Action by the Century Indemnity Company, a Connecticut insurance corporation, against Leo Schmick to recover sums paid on burglary insurance policy. Judgment for defendant. Plaintiff appeals. Affirmed.

*Crane, Crane, Kessel & Deibel* (*Benjamin O. Kessel,* of counsel), for plaintiff.

*Irving M. Hart,* for defendant.

KAVANAGH, J.    Plaintiff issued a moneys and securities policy of insurance to the defendant on December 1, 1951, for which the defendant paid a premium of $98.50. The policy covered and protected the defendant from loss by burglary and contained the following exclusion:

"C. The company shall not be liable for loss, destruction or damage caused by:  *  *  *  (2) any dishonest, fraudulent or criminal act of the insured or of any officer, employee, partner, director, trustee or authorized representative of the assured, whether acting alone or in collusion with others, but this exclusion shall not apply to loss, destruction or damage caused by safe burglary or robbery committed by an employee of the insured."

The defendant operates a gasoline station in the city of Saginaw, Michigan. On August 8, 1952, Jack Emede, who was first employed by the defendant about May 1, 1952, and remained so employed until November 6, 1952, entered the gasoline station while it was closed between 1:30 a.m. and 6:30 a.m. by breaking and entering, taking cash and securities belonging to defendant in the amount of $1,210.02. Subsequently defendant filed a claim for this amount and was paid by plaintiff less $5.50 recovered from one of the defendant's customers. The identity of Emede was not known until November 6, 1952.

On November 1, 1952, Jack Emede again entered the premises by breaking and entering between the hours of 3 a.m. and 6 a.m. and removed $156 in cash and $738.32 in checks. On November 6, 1952, Emede was apprehended by the Saginaw police and admitted the burglaries of August 8, 1952, and November 1, 1952.

Jack Emede's hours of employment with defendant were from noon until 11 p.m. each day. He did the usual work of a gasoline station attendant—waiting on customers, placing money in the cash register, making change, and other necessary work. He was not in charge of the station and had nothing to do with the closing of the station and putting the cash, checks and charge slips in what was thought to be a safe place for the night. In each instance the station was open for several hours before his employment began and for several hours afterward. In each instance he had left the premises for several hours before returning and breaking and entering and burglarizing the place.

Subsequent to the theft of November 1st, defendant made a claim with plaintiff to recover his loss. Plaintiff denied liability under the exclusion in the policy, claiming the loss was caused by an employee of the defendant. The plaintiff also demanded re-

fund of $1,204.52 which it had paid pursuant to defendant's claim for loss of August 8, 1952, at which time it was not known by the plaintiff that defendant's employee was responsible for the loss.

Plaintiff subsequently brought this action to recover the $1,204.52, claiming that it would not have paid defendant if it had knowledge that one of defendant's employees was responsible for the loss; that because of this serious mistake of fact, plaintiff is entitled to full restitution and payment of the money together with interest thereon; that plaintiff is not liable for the loss of November 1, 1952, as said loss was caused by the criminal act of the employee of defendant, and therefore plaintiff is not liable under the exclusion of the policy.

Defendant claims that Jack Emede was an employee only during regular working hours, and that he was not an employee within the meaning of the word as: (a) he had no knowledge as an employee as to where the cash and securities were kept; (b) that said breaking and entering and robbery occurred during the hours when Jack Emede was not an employee; (c) that said loss occurred by reason of the felonious breaking and entering, robbery and burglary—and that, therefore, defendant should not be required to refund any money so paid by the plaintiff, and that the plaintiff is indebted to the defendant in the sum of $306.10 for the theft of November 1, 1952, the loss remaining after subsequent recoveries.

The circuit judge in his opinion stated that the exclusion in the policy involved herein refers to an act by an employee that arises out of and in the course of the employment and that Emede's act was not such. He therefore dismissed plaintiff's suit and taxed costs in favor of the defendant.

Plaintiff appeals to this Court, claiming that the circuit court erred in finding that plaintiff's policy of

insurance excluding liability for loss caused by the criminal acts of defendant's employee referred to an act by an employee arising out of and in the course of the employment, for the reason that such exclusion refers to any criminal act by an employee occurring during or after the hours of employment.

The terms employee and employment have been before this Court for construction in numerous cases, but in practically every one of those decisions the Court was construing a provision of the workmen's compensation law and not a private contract. It has repeatedly held that such a law is a remedial statute and should receive a liberal construction in favor of the injured employee, but the same liberality has not been extended to the exclusion clauses in policies of insurance. On the contrary, the Court has invariably construed such clauses strictly against the insurer. This is properly so since the insurer invariably drafts the contract of insurance and is therefore in a position to thoroughly understand its terms. In the event it desired to exclude acts of employees occurring during or after the hours of employment it could have easily said so. Employee can fairly be construed as meaning one who is active in the work for which he was employed and for which he was paid to do.

In the case of *Francis* v. *Scheper,* 326 Mich 441, 447, 448, Justice Reid, speaking for the Court, said:

"It was incumbent on defendant casualty company, who drafted the policy, in order to escape liability under the circumstances of this case, so to draft the policy as to make clear the extent of nonliability under the exclusion clause."

Justice Reid then proceeds to discuss the principle of law that a policy of insurance couched in language chosen by the insurer must be given the construction of which it is susceptible most favorable to the

insured, and cites numerous authority both inside and outside of Michigan in support of this proposition. I do not consider it necessary here to further quote from that portion of the opinion or the authority cited therein.

As was said by Justice EDWARDS in the case of *Wadsworth* v. *New York Life Insurance Company,* 349 Mich 240, 259:

"Michigan law imposes on life insurance companies twin duties of use of language which is clear and understandable to laymen (*New York Life Insurance Co.* v. *Modzelewski,* 267 Mich 293), and reasonable promptness in acceptance or rejection of the risk when such decision is reserved."

Defendant was an ordinary businessman and as such would place ordinary interpretation upon the language of the policy of insurance. Certainly an ordinary layman would not have construed the word employee to mean other than during the period when he was acting in the work of the employer and during the time he was being paid for his services.

Jack Emede, in the instant case, in breaking and entering the premises of his employer certainly could not be considered to be acting in the work he was employed and paid to do. He was not an employee within the meaning of that term as used in the contract of insurance at the time of the burglary. At least this would be a reasonable construction of the insurance contract, and if there is any doubt or ambiguity with reference to this contract of insurance it should be construed most favorably to the insured. The insurance company having accepted the premium, and drafted the contract of insurance, cannot now say that it intended the language of the insurance contract to mean an employee while working or otherwise.

Judgment of the trial court is affirmed, with costs in favor of the defendant.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.