**SEHON, STEVENSON & COMPANY, Inc., Plaintiff,**

**v.**

**The BUCKEYE UNION INSURANCE COMPANY, Defendant.**

Civ. A. No. 2419.

United States District Court
S. D. West Virginia,
Huntington Division.

April 28, 1969.

Robert O. Ellis, Huntington, W. Va., for plaintiff.

C. Robert Schaub, Jenkins, Schaub & Fenstermaker, Huntington, W. Va., for defendant.

CHRISTIE, District Judge:

This case was originally instituted in the Common Pleas Court of Cabell County, West Virginia, and was removed to this court on the basis of diversity of the parties and requisite amount in controversy, pursuant to the provisions of 28 U.S.C.A. Section 1441 et seq. By stipulation, the parties have submitted the case to the Court for its decision based upon the pleadings and certain documents heretofore stipulated into evidence. Having examined the pleadings and the stipulated evidence and having considered briefs of counsel, the Court now renders its decision.

### FACTUAL BACKGROUND

Plaintiff, a wholesaler, maintains a warehouse and a cash and carry wholesale outlet in Huntington, West Virginia. During the latter part of February 1967, the plaintiff's general manager discovered a shortage in cigarettes, coffee and sugar upon the premises of the wholesale outlet. As a result of this discovery, an accounting audit of the merchandise was made revealing an inventory loss of over $90,000 during the period from 1965 to the middle of 1967. Following an investigation by the West Virginia State Police Department, it was determined that seven men, three of whom were or had been employees of the plaintiff, were responsible for the removal of the merchandise. Five of the seven men, including one who had been an employee of plaintiff, were indicted and pleaded guilty to the charge of conspiring to take, and feloniously taking, property from the premises of the plaintiff.[1] It

---

1. Two of the employees involved in the theft, Richard Edward Peters and Raymond Keith Tomblin, were not indicted. The failure to indict these two individu-

appears that during 1965 and part of 1966, the stolen property was simply secreted out by plaintiff's employees, the actual removal of the property occurring during working hours. However, during 1966, one of the employees secured a key to the door at the wholesale outlet and, after having a duplicate key made, the property was thereafter removed during the early morning hours on week-ends when the outlet was closed.

Effective July 13, 1966, the defendant issued a so-called "Comprehensive Business Policy" to the plaintiff, providing, among other things, insurance " * * * against all risks of direct physical loss of or to the property covered under this endorsement, except as provided elsewhere in this policy." An endorsement to the policy excluded coverage in the case of loss caused by

> " * * * pilferage, appropriation or concealment of any property covered due to any fraudulent, dishonest or criminal act of any employee while working or otherwise, or agent of any insured or any person to whom the property covered may be entrusted, other than any carrier for hire."

It is undisputed that the property removed from the outlet was covered by the policy, however, the defendant contends that since the risk of loss as a result of a criminal appropriation by an employee was specifically excluded from the coverage of the policy, it did not incur any liability to reimburse the insured for the losses sustained under the facts of this case. The plaintiff, on the other hand, takes the position that the property removed after working hours was covered by the policy, contending that the clause excluding coverage for loss by the criminal act of an "employee" refers only to individuals active in the work which they were employed and paid to do and does not refer to the acts of individuals outside of the working hours.

CONCLUSIONS OF LAW

Surprisingly, few cases have been found in which exclusionary clauses similar to the one involved in this case have been construed. Of course, in construing the clause we are guided by the principles generally applicable to the construction of insurance contracts. Thus, it is said that the language in an insurance policy must be construed liberally in favor of the insured, Poindexter v. Equitable Life Assurance Society of United States, 127 W.Va. 671, 34 S.E.2d 340, 345, 161 A.L.R. 990 (1945), and where there is any doubt as to the meaning of terms used in an insurance policy, the doubt must be resolved in favor of the insured. Adkins v. Kentucky Cent. Life & Accident Ins. Co., 131 W.Va. 638, 48 S.E.2d 436, 438 (1948). Nevertheless, where the language of an insurance contract is clear and unambiguous, the court does not, and should not, construe or interpret the contract, rather, its obligation is to apply the language used in the contract to the facts of the particular case "in accordance with the intent thereby clearly expressed." Lewis v. Dils Motor Company, 148 W.Va. 515, 135 S.E. 2d 597, 601 (1964). Having read the exclusionary clause at issue in this proceeding, the Court finds no ambiguity in the language nor any doubt as to the meaning of the words used. Therefore, our duty is to apply the language used in accordance with the expressed intent of the parties to the contract. In pursuance of this duty we find that the exclusionary clause applies to the appropriation of property, covered by insurance, due to a criminal act of any employee, whether such criminal act is committed before, during or after the working hours of the employee.

In urging a contrary conclusion, plaintiff cites a decision rendered by the Supreme Court of Michigan to the effect that the definition of "employee" as used

---

als was apparently a consequence of the plan of the prosecutor to use Peters and Tomblin as witnesses in the proceedings against the five other criminal defendants. That these two individuals were not indicted, however, has no effect on the outcome of this case inasmuch as it is undisputed that they were involved in the removal of the property from the premises of the insured.

in an exclusionary clause should be confined to one "who is active in the work for which he was employed and for which he was paid to do." Century Indemnity Company v. Schmick, 351 Mich. 622, 88 N.W.2d 622 (1968). In the *Schmick* case, a service station attendant burglarized the closed station after working hours. The exclusionary clause there involved provided as follows:

"C. The Company shall not be liable for loss, destruction or damage caused by: * * * (2) any dishonest, fraudulent or criminal act of the insured or of any officer, employee, partner, director, trustee or authorized representative of the Assured, whether acting alone or in collusion with others, but this exclusion shall not apply to loss, destruction or damage caused by Safe Burglary or Robbery committed by an employee of the Insured * * *."

In finding that the acts of the station attendant did not fall within the meaning of the exclusionary clause to the policy, the Michigan Court made the following statement:

"Jack Emede in the instant case in breaking and entering the premises of his employer certainly could not be considered to be acting in the work he was employed and paid to do. He was not an employee within the meaning of that term as used in the contract of insurance at the time of the burglary. At least this would be a reasonable construction of the insurance contract, and if there is any doubt or ambiguity with reference to this contract of insurance it should be construed most favorably to the insured. *The insurance company having* accepted the premium, and *drafted the contract of insurance, cannot now say that it intended the language of the insurance contract to mean an employee while working or otherwise.* (Emphasis added).

In the instant case the insurance company has drafted the contract of insurance in such a manner as to include the very phrase which is absent in the Schmick contract of insurance, the absence of which the Michigan Court found to be fatal to the defendant's position in that case. Thus, in the clause at issue, loss as a result of criminal acts of any employee while working "or otherwise" is excluded from coverage. The obvious intent of the defendant in inserting the phrase "or otherwise" following the phrase "while working" was to cover instances such as those involved in the present case and, while the language might have been more explicit, to construe the exclusionary clause in such a manner as to limit its effect to employees' activities during working hours would require a distorted application of the terms of the clause and would require the Court to completely ignore the phrase "or otherwise." Such action would not only be contrary to the principles of construction enumerated above, but would require the Court to disregard significant language employed in the contract between the insurer and the insured. Had the exclusion applied merely to "employees" and not to "any employee while working or otherwise" the plaintiff's position in this case would, of course, be substantially altered. However, in view of the fact that the phrase "any employee while working or otherwise" was used in the exclusionary clause, we find the plaintiff's position untenable, and accordingly find that the defendant did not incur any liability under its policy for the loss of the property involved in this action.[2] Having found the plaintiff's loss not covered by the policy, we do not reach the other defense to the action raised by the defendant—that the shortage, being disclosed on taking inventory, was excluded from coverage under the policy. It may be noted in passing, however, that

---

2. The plaintiff, in his brief, attributes some significance to the fact that individuals, other than its employees, were involved in removing the property, however, an exclusion for loss by reason of

the theft of an employee "covers a theft by one admitted to the premises through the collusion of a servant." 29A Am. Jur., Insurance, Section 1335 (1960).

in view of the decision in Betty v. Liverpool and London and Globe Insurance Co., 310 F.2d 308 (4th Cir. 1962), it is our opinion that this defense has little merit.

Accordingly, it appearing that the plaintiff's loss does not come within the terms of the policy issued, and that, to the contrary, such loss falls within one of the exclusions to coverage in that policy, the plaintiff cannot recover any sum on its claim in this action and judgment must be rendered for the defendant.