C & H PLUMBING AND HEATING, INC. *v.* EMPLOYERS MUTUAL CASUALTY COMPANY

[No. 210, September Term, 1971.]

*Decided February 15, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, SINGLEY, SMITH and DIGGES, JJ.

*James K. Foley* for appellant.

*John J. Pyne* for appellee.

SMITH, J., delivered the opinion of the Court.

In this case an insured, appellant, C & H Plumbing and Heating, Inc. (C & H), complains because a trial judge determined that a "loss by infidelity of an * * * employee" within the meaning of an insurance policy took place when property of C & H was taken while off duty by persons who worked for C & H. We shall affirm.

We review this case bearing in mind the rules summarized for the Court by Judge Singley in *Gov't Employees Insur. v. DeJames,* 256 Md. 717, 261 A. 2d 747 (1970) :

> "It is well settled that in interpreting insurance contracts, words are to be given their customary and normal meaning. *State Farm Mut. Auto Ins. Co. v. Treas,* 254 Md. 615, 255 A. 2d 296 (1969) ; *American Home Assurance Co. v. Erie Ins. Exchange,* 252 Md. 116, 248 A. 2d 887

(1969) ; *Offutt v. Liberty Mut. Ins. Co.*, 251 Md. 262, 247 A. 2d 272 (1968) ; *Harleysville Mut. Cas. Co. v. Harris & Brooks, Inc.*, 248 Md. 148, 151, 235 A. 2d 556 (1967), and cases there cited. Absent ambiguity the construction of the contract remains within the province of the court and Maryland has not adopted the rule, followed in many jurisdictions, that an insurance policy is to be most strongly construed against the insurer, *American Cas. Co. v. Aetna Cas. & Surety Co.*, 251 Md. 677, 248 A. 2d 487 (1968) ; *Mateer v. Reliance Ins. Co.*, 247 Md. 643, 233 A. 2d 797 (1967) ; *Ebert v. Millers Mut. Fire Ins. Co.*, 220 Md. 602, 155 A. 2d 484 (1959). If the language of an insurance contract is ambiguous, however, construction is for the jury, *Ebert v. Millers Mut. Fire Ins. Co., supra,* 220 Md. at 610; *Eagle Star & British Dominions Ins. Co. v. Fleischman,* 175 Md. 433, 2 A. 2d 424 (1938) ; 22 Appleman, *Insurance Law and Practice* § 12853 (1947) at 7, and the ambiguity is to be resolved against the company which prepared the policy and in favor of the insured, *American Cas. Co. v. Aetna Cas. & Surety Co., supra,* 251 Md. at 684; *Allstate Ins. Co. v. Humphrey,* 246 Md. 492, 496, 229 A. 2d 70 (1967)." *Id.* at 720.

Moreover, we have no right to relieve one of the parties from disadvantageous terms by process of interpretation nor may we make a new contract under guise of construction. *Offutt v. Liberty Mut. Ins. Co.*, 251 Md. 262, 270, 247 A. 2d 272 (1968).

Appellee, Employers Mutual Casualty Company (Employers Mutual), issued a policy to C & H known as an "Installation Risk Policy." Perils insured against were "all risks of direct physical loss or to the insured property from any external cause except as [t]hereinafter excluded." The clause giving rise to the difficulty here read:

"3. THIS POLICY DOES NOT INSURE AGAINST:

    (a) Loss caused by infidelity of an officer or employee of the insured whether such person is acting alone or in collusion with others or by infidelity of persons to whom the insured property is entrusted."

There is no dispute as to the actual facts. The dispute is as to the law applicable to those facts.

By prearrangement on the afternoon of June 24, 1969, three individuals who had worked for C & H from 7:15 a.m. to 4:00 p.m. on that date waited "back in the woods where [they] could see the house" (a farm house in a fenced-in compound where C & H had materials and equipment). They waited "[b]ehind a bunch of bushes" at a point about 75 feet from the compound. After the president of the corporation left, they "went in the back of the house." One of the number procured a ladder and broke out a second story window. Entrance was then effected and the individuals removed copper wire, copper parts, and tubing said to have had a value in excess of $10,000. Claim was presented and was denied by Employers Mutual on the ground that the loss was "caused by the insured's employees."

C & H relies heavily upon the case of *Century Indemnity Company v. Schmick*, 351 Mich. 622, 88 N.W.2d 622 (1958). The policy in that instance provided that the insurance company would not be liable for loss caused by "any dishonest, fraudulent or criminal act of the Insured or of any * * * employee * * * of the Assured, whether acting alone or in collusion with others." A person who worked for the insured entered his place of business between 1:30 a.m. and 6:30 a.m. and took out cash and securities amounting to more than $1,200. The court said:

    "Defendant was an ordinary businessman and

as such would place ordinary interpretation upon the language of the policy of insurance. Certainly an ordinary layman would not have construed the word employee to mean other than during the period when he was acting in the work of the employer and during the time he was being paid for his services." *Id.* at 627.

It is noted that in the course of its opinion the court made reference to the Michigan rule "that a policy of insurance couched in language chosen by the insurer must be given the construction of which it is susceptible most favorable to the insured." We have already quoted *Gov't Employees Insur.* stating that Maryland has not adopted that rule.

A somewhat similar case, citing *Century Indemnity,* is *Sehon, Stevenson & Co. v. Buckeye Union Insurance Co.,* 298 F.Supp. 1168 (S.D. W.Va. 1969). The employee exclusion there had added to it the words "while working or otherwise." Entry had been effected under circumstances similar to those in this case and in *Century Indemnity.* The court was of the opinion that the words "or otherwise" rendered the insurance company not liable.

*Richards on the Law of Insurance* § 298 (5th ed. Freedman 1952) states:

"Courts in construing and applying provisions of policies excepting from coverage loss or damage caused by the dishonesty of employees have respected the express language and denied liability on the part of the insurer." *Id.* at 987.

In support of that proposition the author cites *Hunter v. Pearl Assur. Company,* 292 Mich. 543, 291 N. W. 58 (1940), and *Hoffman Bros. v. Commercial Union Assur. Co.,* 221 App. Div. 167, 222 N.Y.S. 641 (1927), aff'd 248 N. Y. 578, 162 N. E. 531. In *Hunter* the court held that "theft" as used in a clause excluding theft by employees included larceny by conversion. In *Hoffman* a public por-

ter was engaged to carry sample cases for the insured officer who was traveling seeking orders. It was held that the porter came "within the class comprised by the words 'employee, servant, or messenger.' "

On the general subject see the annotation *"Construction and Application of Provision of Insurance Policy Excepting from Coverage Loss or Damage Caused by Dishonesty of Employee"* 12 A.L.R.2d 236 (1950).

On the subject of ambiguity 1 *Couch on Insurance* 2d (1959) states:

"§ 15:83. — Test in determining existence of ambiguity.

"The test to be applied by the court in determining whether there is ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean. The criterion is ambiguity from the standpoint of a layman, not from that of a lawyer." *Id.* at 824.

We see no ambiguity in this policy. It is a question of determining the intention of the parties.

In *American Casualty Co. of Reading, Penn. v. Wypior*, 365 F. 2d 164 (7th Cir. 1966) the court commented on "employee," stating:

"The word 'employee' appears in the law in many different contexts and thus does not lend itself to any inflexible definition. The definitions of an 'employee' for purposes of workmen's compensation statutes and collective bargaining agreements, for example, do not determine the meaning of 'employee' as used in a policy of insurance. When the word 'employee' appears in a contract of insurance and is not defined in the policy, it must be construed in a manner most likely to correspond to the intention of the parties to the contract. General Acc. Fire and Life

Assur. Corp. v. Brown, 35 Ill. App.2d 43, 181 N.E.2d 191, 195 (1962). The intention fairly attributable to the insurer and the insured, from an objective standpoint and in the absence of a contrary indication, should therefore reflect the ordinary meaning of the word as it is understood by persons generally and should highlight the characteristics which the law most often attributes to employment." *Id.* at 166.

In *Wharton v. Fid.-Balto. Nat. Bank*, 222 Md. 177, 158 A. 2d 887 (1960), in a case involving nothing similar to this case, Judge Niles said for the Court relative to the words "employed" and "employees":

> "These words are not legal or technical words of art, but are in common usage in the English language, and have many meanings. In ordinary parlance, a man's 'employment' is the principal occupation by which he earns his living, and he is 'employed' by some other man or organization for a money reward. But there is no necessary connection between employment and money. A man may 'employ' his leisure time in cultivating his garden. A man's 'employment' during the summer may be the care of his boat. A man may 'employ' his time in reading for pleasure. A squad of soldiers may be 'employed' in policing the camp. The term 'employee' is ordinarily used to describe some person in a subordinate position." *Id.* at 187.

*Webster's New International Dictionary of the English Language* (2d Ed. Unabridged 1959) defines "employee" as "One employed by another; one who works for wages or salary in the service of an employer." *The Random House Dictionary of the English Language* (Unabridged Edition 1967) defines the word as "a person working for another person or a business firm for pay."

It goes without saying that a person who worked for C & H would have more familiarity with the surroundings

and, therefore, be better able to steal from C & H because of that familiarity than a person who did not work for C & H.

In the view we take of this case the word "employee" in the context in which it is used would be understood by the average, ordinary individual as including the persons responsible for the thievery here. He would regard them as employees after quitting time as well as during their working day.

C & H dwells on the meaning of the word "infidelity" and attempts to compare that term to the meaning of the term in certain other insurance contexts, pointing to Code (1968 Repl. Vol.) Art. 48A, § 69 (1) in which fidelity insurance is defined as "insurance guaranteeing the fidelity of persons holding positions of public or private trusts." It then goes on to examine fidelity losses. We do not regard the point as well taken.

*Webster, op. cit.,* says of "infidelity":

"1. * * *

"2. Breach of trust; unfaithfulness to a charge or to moral obligation; treachery; deceit; also an unfaithful act.
* * *

"Syn. * * * perfidy."

*Random House, op. cit.,* defines the term as "unfaithfulness; disloyalty."

Using the common, every day understanding of the terms we are of the opinion that when persons who regularly worked for C & H stole $10,000 worth of supplies this was a "loss caused by infidelity of an employee of the insured." As Judge (now Chief Judge) Hammond said in his dissenting opinion in *Old Colony Ins. Co. v. Moskios,* 209 Md. 162, 120 A. 2d 678 (1956):

"One usually gets in this life only what he pays for. Insurance coverage is no exception." *Id.* at 177.

*Judgment affirmed; appellant to pay the costs.*