# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MARIE SAINT HILAIRE, Individually and as Wife and Administratrix of the Estate of Therisson Augustin, and MARCEA AUGUSTIN, and EDNEST AUGUSTIN,

Plaintiffs,

v.

MARTHA IRENE GONZALEZ LANKFORD, and UNITED FARM FAMILY INSURANCE COMPANY,

Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

K16C-12-026 JJC
In and For Kent County

Submitted: December 15, 2017
Decided February 6, 2018

## <u>MEMORANDUM OPINION AND ORDER</u>
### *Upon the Parties' Claims for Declaratory Relief*

Keith E. Donovan, Esquire & Reneta L. Green-Streett, Esquire, Morris James, LLP, Dover, Delaware, Attorneys for the Plaintiff.

David C. Malatesta, Jr., Esquire, Kent & McBride, P.C., Wilmington, Delaware, & Margaret Fonshell Ward, Esquire, Ward & Herzog, LLC, Baltimore, MD, Attorneys for the Defendants.

Clark, J.

This matter involves a declaratory judgment action regarding parties' rights under an umbrella policy. The insured, an alleged tortfeasor in an automobile accident, did not obtain underlying primary automobile bodily injury coverage at the level required by the umbrella policy. As a result, the umbrella insurer argues that it has no coverage obligations. The injured parties (based on an assignment of rights by the insureds) counter that the policy's language provides for this contingency and that umbrella coverage is nevertheless triggered.

For the reasons discussed below, under Maryland law and based on uncontroverted stipulated facts, the policy directly addresses the issue. Namely, it provides that the injured parties, now by assignment, have up to one million dollars of umbrella coverage available. The insurer's obligation to indemnify its insured and thus compensate the injured parties, however, is not triggered unless and until the value of the injured parties' claims are fixed by verdict or settlement to exceed $250,000. In the event damages exceed that amount, the injured parties must absorb the gap in coverage and are due no compensation from Farm Family for any final damages fixed at less than $250,000.

## I. Background

### A. Stipulated Facts

The parties stipulated to the following facts in support of their joint request that the Court decide this matter on the briefing. The parties also agree that Maryland law applies. On December 30, 2014, Defendant Martha Irene Gonzalez Lankford (hereinafter "Mrs. Lankford") left a stop sign and entered a roadway in Sussex County. She pulled into the path of Plaintiff Therisson Augustin's (hereinafter "Mr. Augustin's") vehicle and the two vehicles collided. Mr. Augustin suffered injuries and later died as a result of the collision. Presently, the parties include his estate and those allegedly injured as a result of his death (hereinafter "the

injured parties") and Defendant United Farm Family Insurance Company (hereinafter "Farm Family").

At the time of the collision, Farm Family provided Mrs. Lankford's vehicle with $100,000 per person bodily injury coverage. Also at the time of the collision, Mrs. Lankford lived with her husband's father, Robert Lankford (hereinafter "Mr. Lankford"), in Delmar, Maryland. At that time, Farm Family separately insured Mr. Lankford under a policy that provided one million dollars in umbrella coverage. The parties stipulate that Mrs. Lankford qualified as an insured under her father-in-law's Farm Family umbrella policy.

In 2015, the injured parties partially settled their claims against Mrs. Lankford. Pursuant to the settlement, the injured parties accepted the $100,000 in underlying policy limits.[1] In exchange, they (1) released Mrs. Lankford from all further personal liability, and (2) Mr. and Mrs. Lankford assigned all of their rights in the Farm Family umbrella policy to the injured parties.[2]

Farm Family denied coverage under its umbrella policy because Mrs. Lankford secured only $100,000 per person bodily injury coverage rather than the $250,000 per person coverage required by the umbrella policy. In response, the injured parties (pursuant to the assignment of rights), claim that although Mrs. Lankford did not secure and exhaust the limits identified in the umbrella policy's declaration page, the policy provides for this contingency and coverage is triggered nevertheless. In the alternative, the injured parties argue that the policy is ambiguous and, under Maryland law, it should be interpreted against its drafter.

---

[1] Mr. Augustin's personal State Farm policy provided $15,000 in underinsured motorist coverage for the accident which was tendered and accepted. Neither party argues that Mr. Augustin's State Farm coverage is relevant to this coverage dispute.

[2] The parties did not include a copy of the assignment in the record. The stipulated facts provide that the assignment is valid and accordingly the Court's reasoning is based upon the premise that it is unqualified. The release signed by the injured parties was also not included in the record.

## B. The Terms and Conditions of the Umbrella Policy

The parties included a complete copy of the umbrella policy with the stipulation of facts. The declaration page, in the only portion in all capitals, bolded and italicized, provides:

> *TO AVOID GAPS IN COVERAGE, YOU MUST MAINTAIN THE MINIMUM LIMTS OF LIABILITY STATED BELOW ON ALL PRIMARY INSURANCE POLICIES WHICH APPLY TO YOU* (emphasis omitted).

The declaration page then lists bodily injury limits of $250,000 per person as "primary insurance requirements."

> Part II of the umbrella policy, discussing coverage, provides that:

> We will pay on an INSURED'S behalf DAMAGES for which an INSURED becomes legally responsible due to PERSONAL INJURY or PROPERTY DAMAGE caused by an OCCURANCE. This coverage applies only to DAMAGES in excess of the PRIMARY INSURANCE or the RETAINED LIMIT[3], whichever applies.

The policy defines primary insurance as "any insurance collectible by the INSURED which covers the INSURED'S liability for PERSONAL INJURY or PROPERTY DAMAGE." The definition of primary insurance does not reference the amount of coverage necessary other than to refer to that which is "collectible." Germanely, this definition of primary insurance, which is used throughout the policy, does not reference a minimum amount of underlying coverage. In addition, Part VII. 5. provides that "[t]his insurance [the umbrella coverage] is excess over other collectible insurance."

> Next, Part IV of the policy, discussing limits of liability, provides that:

> Regardless of the number of INSUREDS, claims or injured persons, the maximum we pay as DAMAGES resulting from one OCCURENCE shall not exceed the amount stated in the declarations page, subject to the following:

---

[3] The parties agreed that the retained limit contingency does not apply in this case.

4

1. This policy only pays after the limits of the PRIMARY INSURANCE and excess insurance, and any other PRIMARY INSURANCE and excess insurance covering the claim, have been paid by you or on your behalf.

2. If the PRIMARY INSURANCE terminates or **if the limits are less than the limits show in the declarations page, we pay DAMAGES we would have paid as if the** *PRIMARY* **INSURANCE** had not been terminated or if its **limits had not been less than the limits shown in the declaration page** (emphasis added).

Finally, Part V of the policy, discussing primary insurance requirements, provides that:

This policy requires that all INSUREDS have and maintain the PRIMARY INSURANCE coverage at or above the limits of liability shown on the declarations page. … *If the PRIMARY INSURANCE does not provide at least the limits indicated, you will be responsible for the loss up to the required limits.* **We only pay for the amount of loss which is:**

1. *above the required PRIMARY INSURANCE limits*, and
2. above any other insurance collectible for an occurrence. (emphasis added)

As stated previously, the definition of "primary insurance", which is used in the provisions discussed above, does not include a defined amount of underlying coverage. The definition refers only to "any insurance collectible by the insured." *Separate* from that definition inserted throughout the policy, Part V of the policy places an independent obligation upon the insured to maintain the $250,000 per person bodily injury coverage referenced in the declaration page.

5

## II. Applicable Standards and Maryland's Rules of Contract Construction

The parties jointly submitted this matter to the Court for resolution based on stipulated facts and a complete copy of the umbrella policy. Accordingly, the Court will consider the matter to be submitted for decision pursuant to cross-motions for summary judgment.[4] Specifically, the parties request the Court to issue a declaration pursuant to 10 *Del. C.* Ch. 65[5] regarding the coverage provided under the umbrella policy and to what extent, if any, it must be paid pursuant to the terms and conditions of the policy. In such matters, the Court is given the statutory power to construe questions of "construction or validity arising under [a] contract . . . and [to provide] a declaration of rights, status or other legal relations thereunder."[6] Furthermore, an "actual controversy" must exist before a Delaware court may exercise its jurisdiction to issue a declaratory judgment.[7]

In issuing a declaratory judgment regarding the parties' rights and obligations under the contract, the Court must interpret the contract. Under Maryland Law, insurance policies are construed like any other contract.[8] Construction of insurance policies is governed by a few well-established principles.[9] Unless a statute, regulation, or public policy would be violated, the first principle of construction of

---

[4] *See* Super. Ct. Civ. R. 56(h) (providing where "the parties . . . have not presented argument to the Court that there is an issue of fact . . . the Court shall deem the motion to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motion.").

[5] Relevant to the case at hand is 10 *Del.C.* § 6503's recognition that pursuant to the declaratory judgment Act, a "contract may be construed either before or after there has been a breach thereof."

[6] 10 *Del. C.* § 6502.

[7] *XI Specialty Ins. Co. v. WMI Liquidating Trust*, 93 A.3d 1208, 1217 (Del. 2014).

[8] *Empire Fire & Marine Insurance Co. v. Liberty Mutual Insurance Co.*, 699 A.2d 482, 493 (Md. Ct. Spec. App. 1997)(*citing North River Ins. Co. v. Mayor & City Council of Balto.*, 343 Md. 34, 680 A.2d 480 (Md. 1996); *Government Employees Ins. Co. v. Harvey,* 278 Md. 548, 366 A.2d 13 (Md. 1976); *Bond v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 289 Md. 379, 424 A.2d 765 (Md. 1981)).

[9] *Id.* (*citing Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486, 488 (Md. 1985)).

insurance policies in Maryland is to apply the terms of the contract.[10] This principle serves to achieve the touchstone of policy construction -- to ascertain and effectuate the intent of the parties to the agreement.[11] To divine properly the parties' intent, the policy is viewed as a whole, without emphasis being placed on particular provisions.[12] Whenever possible, each clause, sentence, or provision shall be given force and effect.[13] With the exception of expressly defined terms, the language used in the policy must be given its ordinary and usually accepted meaning.[14]

## III. Discussion

### A. The Parties Competing Interpretations of the Umbrella Policy

The injured parties focus on Part IV of the policy, and assert that the policy expressly contemplates a situation where the insured maintains primary insurance of less than the limits required by Part V. In such an event, they emphasize that Part IV of the policy provides that Farm Family must pay limits "as if the primary insurance … limits had not been less than the limits shown in the declaration page". The injured parties argue that this language requires the umbrella policy to drop down to the lower limits, and Farm Family is liable for losses exceeding the $100,000 paid by the primary policy. According to the injured parties, a drop down

---

[10] *Mutual Fire, Marine & Inland Ins. Co. v. Vollmer*, 508 A.2d 130, 133 (Md. 1986).

[11] *Empire Fire*, 699 A.2d at 493 (1997)(*citing Aragona v. St. Paul Fire & Marine Ins. Co.*, 281 Md. 371, 375, 378 A.2d 1346, 1348-49 (Md. 1977); *Schuler v. Erie Ins. Exch.*, 81 Md. App. 499, 568 A.2d 873, *cert. denied*, 319 Md. 304, 572 A.2d 183 (1990)).

[12] *Id.* (*citing Sullins v. Allstate Ins. Co.*, 340 Md. 503, 667 A.2d 617 (Md. 1995); *Nolt v. United States Fidelity & Guar. Co*., 329 Md. 52, 617 A.2d 578 (Md. 1993); *Simkins Indus., Inc. v. Lexington Ins. Co.*, 42 Md. App. 396, 401 A.2d 181, *cert. denied*, 285 Md. 730 (Md. Ct. Spec. App. 1979).

[13] *Id.* at 494 (*citing Pacific Indem*, 488 A.2d 486, 488 (Md. 1985); *Truck Ins. Exch. v. Marks Rentals, Inc.*, 288 Md. 428, 418 A.2d 1187 (Md. 1980); *Gottlieb v. American Auto. Ins. Co.*, 177 Md. 32, 7 A.2d 182 (Md. 1939)).

[14] *Aragona*, 378 A.2d at 1348 (Md. 1977)(*citing U.S.F. & G. v. Nat. Pav. Co.*, 228 Md. 40, 178 A.2d 872 (Md. 1962); *John Hancock Mut. Life Ins. Co. v. Plummer*, 181 Md. 140, 28 A.2d 856 (Md. 1942); *C & H Plumbing v. Employers Mut.*, 264 Md. 510, 287 A.2d 238 (Md. 1972); *State Farm Mutual v. Treas.*, 254 Md. 615, 255 A.2d 296 (Md. 1969)).

of coverage is mandated by this provision and to not do so, would give no effect to that provision.

Farm Family counters that the policy does not drop down to cover the gap between the primary and umbrella policies. In this regard, it argues that the primary limits of $250,000 must be actually paid before the umbrella policy is triggered. For this premise, Farm Family relies heavily on what it asserts is a general understanding regarding obligations of excess and umbrella insurers. With regard to the policy language, it focuses on Part V of the policy that requires the insured by reference to the declaration page, to maintain $250,000/$500,000 in primary bodily injury coverage. Farm Family also focuses on a provision that it argues does not permit one to waive the recovery of a gap between the amount recovered and the required primary coverage amount. Namely, the policy provides that "if the primary insurance does not provide at least the limits indicated, you will be responsible for the loss up to the required limits". In the context of this case, Farm Family asserts that such language required Mrs. Lankford, or someone on her behalf, to actually pay the $150,000 gap necessary to trigger Farm Family's obligation under its umbrella policy.

## B. The Policy's provisions, when read as a whole, require Farm Family to provide coverage if the insured's legal liability for damages exceeds $250,000.

The parties generally agree that this issue is one of first impression under Maryland law. As a threshold matter, the Court finds there to be an actual controversy regarding this policy's construction. Accordingly, in issuing a declaratory judgment, the Court must decide the matter as it predicts a Maryland Court would after applying Maryland law.

At the outset, the Court recognizes the competing provisions in the policy that produce the tension at issue. The only way to read these provisions together as a whole and give effect to each of them, leads to the conclusion that Farm Family's

8

coverage obligation is conditionally triggered. The policy provides (1) the insured had the obligation to purchase $250,000 of relevant underlying coverage, and (2) the consequence if the insured did not purchase that amount. Namely, the consequences of Mrs. Lankford's failure is Farm Family's relief from its duty to indemnify Mrs. Lankford for damages fixed at less than $250,000. Since the policy provides that the insured must absorb this gap, the injured parties, as assignees, must likewise absorb this gap. This will result in a credit of $150,000 toward any damages ultimately assessed over $100,000 in the tort action. Accordingly, Farm Family's obligation to indemnify its insured cannot be determined until final disposition of an underlying action that fixes the amount of damages.

Turning to the policy's language, Part V's requirement for an amount of underlying coverage is coupled with a provision that provides the consequence for not doing so. Namely, Part V expressly provides that if the insured does not obtain the full amount of coverage, then Farm Family "will only pay for the amount of the loss which is: 1. [a]bove the required primary insurance limits; and 2. [a]bove any other insurance collectible for an occurrence." Accordingly, the plain language of Part V provides for the contingency at issue. When an insured does not obtain the required amount of primary insurance, Farm Family need only indemnify the insured for damages fixed above $250,000.

This outcome is also consistent with Part IV of the policy. That provision clearly provides that if the insured obtains less than the required underlying coverage, then Farm Family must provide indemnity coverage, but only in an amount as "if its limits had not been less than the limits shown in the declaration page". In the unrelated circumstance involving an underlying insurer's insolvency, Part IV separately, though consistently provides that if the primary insurer does not pay the full $250,000, then Farm Family assumes the obligation to pay damages that

9

"exceed the required limits of the primary insurance as shown in the declarations page."

Lastly, the language in the umbrella policy's declaration page addresses the same contingency. Namely, it provides that to avoid "gaps" in coverage, the insured must maintain the minimum limits of liability stated below. "Gap" is not defined in the policy, but use of that term is consistent with other provisions in the policy. A gap in coverage would mean coverage before (through whatever primary limits are available) and after (through the umbrella policy), but not in between. To the extent one of the parties, or both believe such a construction is not practical, a reading otherwise would not give force and effect to all terms in the policy.

The injured parties argue that Part IV requires Farm Family's coverage obligation to completely drop down and provide coverage for all damages in excess of $100,000. In order to give effect to all provisions in the policy, the injured parties' reading is also incorrect. Namely, the Court must give effect to Part V's language imposing the consequence that Farm Family need only provide coverage at a level equivalent to what would be necessary if the insured obtained the full underlying coverage. Part IV also recognizes that Farm Family need only pay damages at the level it would have been required to if the insured fully met her obligations.

Much of Farm Family's argument in this case focuses on what it asserts is the general rule regarding drop down coverage requirements. At the outset, the cases relied upon by Farm Family are primarily cases involving excess insurance policies as opposed to umbrella polices. There is a difference.[15] In addition, a "general rule" and "common understanding" of what triggers an excess policy or an umbrella policy have never been held to control over the express language of the policy.

---

[15] *See* 4 NEW APPLEMAN ON INSURANCE LAW § 24.02[3], at 24-11(Library Ed. 2017) (explaining that an "umbrella policy differs from an excess policy in a critical aspect: an umbrella policy typically insures against certain risks that a concurrent primary policy does not . . . An umbrella policy is thus a "gap filler" . . . by design it provides first dollar coverage where a primary policy or excess policy does not.").

Farm Family references no provision in its policy that provides that a failure to obtain the listed underlying limits results in umbrella coverage not being triggered. Nor has the Court located any such provision. Accordingly, the policy provides that Farm Family's indemnification obligation is triggered if and when damages in amounts over $250,000 are assessed through its settlement with the injured parties or by verdict. In such an event, Farm Family must receive a credit for any settlement or judgment in the amount of $150,000. Thereafter, Farm Family must provide up to one million dollars in coverage if warranted by the damages.[16]

The Court finds another jurisdiction's decision in *Cincinnati Ins. Co. v. Franck*[17] to be informative and persuasive. In *Franck*, the Court of Appeals of Minnesota held that an umbrella policy provided coverage when the insured settled for less than the primary policy limits because there was no language in that policy that required primary insurance to be exhausted.[18] The *Franck* court examined Cincinnati Insurance's policy and recognized, as here, that there was no policy language requiring exhaustion of a particular amount of primary insurance.[19] In such an instance, the *Franck* court held that the injured party must absorb the gap between the settlement amount and the primary policy limits identified in the declaration page.[20] In other words, the Court found that indemnity coverage (1) was triggered with (2) the umbrella carrier due a credit for the "gap."

As in *Franck*, this case involves injured parties and an insured partially settling claims for less than the primary policy limits required by the umbrella policy. This creates a gap between the primary policy and the umbrella policy. The policy

---

[16] By way of example, if the injured parties' ultimate recovery were to be $250,000, Farm Family would provide no additional indemnity coverage. If damages were to become fixed at $1,250,000 or greater, then Farm Family would be required to indemnify Mrs. Lankford with the entire $1,000,000 policy limits.
[17] 644 N.W. 2d 471 (Minn. Ct. App. 2002).
[18] *Id.* at 473.
[19] *Id.*
[20] *Id*. at 476.

at issue in *Franck* contained a provision that the "[insurer] will pay only the amount which is more than the required basic policy limits and more than any other collectible insurance", which is substantially similar to Part V of the Farm Family policy. Part V of Farm Family's policy, in comparison, provides that "if the PRIMARY INSURANCE does not provide at least the limits indicated, [the insured] will be responsible for the loss up to the required limits. [Farm Family] only pays for the amount of loss which is … above the required PRIMARY INSURANCE limits." Moreover, like Maryland, Minnesota law dictates that its courts must construe insurance policies according to their terms, giving policy language its ordinary and usual meaning to give effect to the parties' intent as it appears from the contract.[21] Also, as in *Franck*, the Farm Family policy at hand contains no policy language requiring the exhaustion of the underlying policy at a set amount in order to trigger coverage.

Farm Family argues that providing coverage in this instance would result in a significant increase in premiums for umbrella policies. At the outset, Farm Family drafted the policy and if it was its intent to provide for an exhaustion or trigger requirement, it should have included a provision requiring it. In any event, enforcing the provisions of this policy does not markedly change the risk for the insurer. Farm Family is still due the benefit of the required $250,000 in underlying coverage, but cannot avoid all obligations under its policy in the absence of language absolving it from its coverage obligations.

This Court also finds persuasive the public policy consideration discussed in *Franck* regarding whether permitting plaintiffs to settle for less than primary policy limits would incentivize token settlements. The *Franck* Court observed that it would not, because allowing plaintiffs to voluntarily "swallow the gap" between

---

[21] *Id*. at 473 (*citing Dairyland Ins. Co. v. Implement Dealers Ins. Co.*, 494 Minn. 236, 244-45, 199 N.W. 2d 806, 811 (Minn. 1972)).

settlements would be against their own self interests.[22]  This Court's decision that Farm Family is liable for losses exceeding $250,000 does not alter the deal they bargained for, and would not incentivize insureds to maintain policy limits lower than those required by umbrella policies or settle with other insurers for less than policy limits.

Although both parties agree that this is an issue of first impression in Maryland, at oral argument, Farm Family argued that two Federal District Court of Maryland cases addressed similar issues.  Both are distinguishable.  Neither case addresses the policy language present in the Farm Family umbrella policy.  One of the two cases involved an excess policy as opposed to an umbrella policy.

First, Farm Family cites *Highlands Ins. Co. v. Gerber Products Co.*[23]  That case evaluated an excess insurance policy as opposed to an umbrella policy.  Its general rule that "*excess* carriers ordinarily are not required to provide drop-down coverage . . ."[24] is not helpful in this case involving an umbrella policy. Furthermore, *Gerber* is distinguishable because the policy at issue did not define the underlying insurance requirement to include that which is "collectible."[25]  The Federal District Court of Maryland noted that this definition of primary coverage was *not* present in the Highlands policy.[26]  To the contrary, the Farm Family policy defines primary insurance as "any insurance collectible by the insured."  Accordingly, "collectible" is the operative term in the definition of primary insurance, which is in turn plugged into the balance of the policy *without reference to the declaration page's underlying coverage amount requirements*.

---

[22] *Id*. (*citing Drake v. Ryan*., 514 N.W. 2d 785, 789)(Minn. 994)).

[23] 702 F. Supp. 109, 112 (D. Md. 1988).

[24] Id. at 112.

[25] *Id.*

[26] *Id.* The injured parties also rely on *Gerber* because it references its policy's failure to include references to "collectible insurance" as does Farm Family's.  They argue that this alternatively makes the policy ambiguous.  Since the Court does not find the policy to be ambiguous, it declines to address this argument.

Second, Farm Family cites the Maryland Federal District Court decision in *McGirt v. Royal Ins. Co. of America*[27] which is also distinguishable. At the outset, that decision seemed to acknowledge a general rule that umbrella polices are more likely to drop down and provide coverage than excess policies.[28] In the case at hand, Farm Family, rather than advocating the general rule for umbrella coverage discussed in the case it cites, advocates the general rule for excess insurers. Its argument also does not adequately recognize the Royal Insurance policy language in that case. Namely, *Royal* involved a bankruptcy of an underlying carrier, and the policy contained a provision that specifically addressed the bankruptcy.[29] Though Farm Family easily could have included language in the policy providing for the outcome it advocates, there is no language providing anything other than that indemnity coverage is conditionally triggered in this case if there are sufficient damages.[30]

Farm Family also cites *Comerica Inc. v. Zuric American Insurance Co.*[31], *Trinity Homes LLC v. Ohio Casualty Co.*[32] , *Kippers Co. v. Aetna Casualty & Surety Co.*[33], and *Zeig v. Massachusetts Bonding & Insurance Co.*[34] The Court reviewed these cases and notes that each of them involve interpretations of polices that specifically require actual payment of a sum certain before coverage is triggered. In comparison, Farm Family's duty to pay is premised upon payment of primary

---

[27] 399 F. Supp.2d 655 (D. Md. 2005*) aff'd in part rev'd in part* 207 Fed. Appx. 305 (4th Cir. 2006).
[28] *See id.* at 667 (recognizing that while it may be true as a general statement of common practice in the insurance industry that umbrella polices drop down to provide coverage, it is irrelevant in light of specific policy language that provides to the contrary).
[29] *Id.*
[30] For instance, had the policy included in the definition of primary insurance a phrase such as, "and at limits no less than those required in the declaration page", that revised definition would have engendered a different outcome. The Court is unable to read such a provision into the contract, however, and it must give full force and effect to all the policy's provisions.
[31] 498 F. Supp. 2d 1019, 1032 (E.D. Mich. 2007).
[32] 629 F.3d 653 (7th Cir. 2010).
[33] 98 F.3d 1440 (3d Cir. 1996).
[34] 23 F.2d 665 (2nd Cir. 1928).

insurance that is "collectible." These cases do not support the conclusion that given the language in this policy, actual payment of the coverage referenced in the declaration page is required to trigger coverage, provided damages are fixed at over $250,000.

In summary, the Court does not interpret the umbrella policy to require Farm Family to be liable for any part of the gap between policies. Mrs. Lankford may have been personally liable for the gap before the settlement, but there are no terms in the umbrella policy that require her to actually pay that gap before the umbrella policy triggers. Farm Family is forced to shoulder no additional risk other than what it bargained for and drafted into its policy.

## IV. Conclusion

For the reasons set forth above, the Court declares that, under the clear and unambiguous terms of the umbrella policy, Farm Family is obligated to pay damages to the injured parties in amount fixed by any verdict or settlement in an underlying tort action that exceed $250,000. At that point, Farm Family is obligated to provide coverage for the damages in that fixed amount, up and until the exhaustion of its one million dollars in available coverage.

**IT IS SO ORDERED**

/s/Jeffrey J Clark
Judge

15